No. 12714

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

_____

MAXINE I. RASMUSSEN,

Claimant and Respondent,

-vs-

GIBSON PRODUCTS COMPANY OF BOZEMAN,

Employer and Appellant,

-vs-

UNIVERSAL UNDERWRITERS INSURANCE
COMPANY,

Defendant and Appellant.

_____

Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

        Keefer and Roybal, Billings, Montana
        Neil S. Keefer argued, Billings, Montana

    For Respondent:

        Drysdale, McLean and Scully, Bozeman, Montana
        James A. McLean argued, Bozeman, Montana

_____

Submitted:  September 16, 1974

Decided:

Filed:

_____
                         Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of Gallatin County reversing an order of the Workmen's Compensation Division (the Division). The Division had denied the petition of respondent, Maxine Rasmussen, for additional workmen's compensation benefits for an old injury she sustained on October 14, 1969, while employed by Gibsons in Bozeman, Montana.

The hearing before the Division was held first on June 11, 1973, and again on August 22, 1973, when it was concluded. At this hearing the following evidence was presented: Respondent testified that on October 14, 1969, she suffered an injury to her back during the course of her employment with Gibsons in Bozeman; that the Industrial Accident Board (now the Workmen's Compensation Division) compensated her for wages lost from October 16 through October 27, 1969, and for medical expenses incurred from October 20 through December 8, 1969; that she returned to work at Gibsons after October 27, 1969, but persistent back trouble compelled her to quit during the summer of 1970; that in June 1970, during a train ride to Oregon her back problems intensified and she thereafter visited a chiropractor in Oregon who gave minor relief; that on August 3, 1970, she commenced work at Artcraft Printers in Bozeman, but inability to lift anything and back pain from just sitting caused her to quit on October 30, 1970; that from December 1970, to September 1971, she attempted several light housekeeping jobs, but was forced to quit all of them on account of her back; that in December 1971, she obtained employment on Tom Holdsworth's egg farm near Bozeman, but her back bothered her doing the work; that in June 1972, she took another trip to Oregon, but the sitting bothered her so severely that she could hardly walk, and when she returned home she was unable to lift anything; that in July 1972, Holdsworth finally let her go

- 2 -

because her back simply would not permit her to do any work; that on July 14, 1972, she filed a claim with the Division alleging an injury or a recurrence thereof on July 5, 1972; that she knew Holdsworth did not carry workmen's compensation insurance but he did carry medical insurance that he thought might cover her, but she was unfamiliar with the procedures for filing workmen's compensation claims.

Dr. De Heetderks, who treated respondent for her 1969 injury at Gibsons, diagnosed respondent's condition then as a muscle strain and released her from his care in December 1969. Respondent did not see a doctor again until sometime in 1972, but testified this was because Dr. De Heetderks said she would just have to live with her condition. After seeing Dr. De Heetderks again in 1972, respondent also visited Drs. Varberg, Humberger, and Robinson at different times beginning in June 1972, and ending April 1973. Dr. Humberger testified that respondent told him she was unsuccessful in work because of back pain; that in December 1972, he diagnosed respondent's condition as a possible herniated disc; but that he could not say with any degree of certainty whether there was a causal relationship between the injury sustained by respondent on October 14, 1969 and her condition in July 1972, but more will be said about this hereafter.

On the basis of this evidence, the Division found that a preponderance of credible evidence failed to sustain a finding of proximate cause between respondent's present disability and her injury of October 14, 1969, and concluded that respondent was not entitled to further workmen's compensation benefits.

Respondent timely petitioned for a rehearing but the Division on October 30, 1973, denied the petition. Thereafter respondent perfected an appeal to the district court under the provisions of section 92-833, R.C.M. 1947.

The hearing before the district court was held on January 14, 1974. In addition to having the certified record of the Division, the district court heard testimony from respondent, Dr. Humberger, Roberta Adams, a former co-worker of respondent's at Artcraft, and Tom Holdsworth, her last employer. Respondent's testimony was more orderly than that heard by the Division, but in substance contained nothing new except for the fact she had undergone surgery for a herniated disc after the Division proceedings had closed.

Adams testified that respondent complained of back trouble after only two weeks at Artcraft and again before she quit. Holdsworth testified that respondent told him about her back problems before she took the job; that respondent thereafter continued to complain about her back, which became progressively worse, especially after her June 1972, trip to Oregon; and that since respondent felt she had aggravated the old injury suffered at Gibsons, after he found she was not covered by his own medical insurance he advised her to reopen the matter with the Division.

Dr. Humberger testified that on November 7, 1973, he performed surgery on respondent for removal of a herniated disc; that the herniated disc could be related back to the 1969 injury at Gibsons; and that the symptoms in general of respondent's back trouble dated back to the injury at Gibsons.

The district court found that respondent continued to suffer from and complain of intermittent low back pain from the time of her injury at Gibsons in 1969 to the present; that this condition prevented her from working at length at any job; and that a preponderance of the evidence established that respondent's present back condition was causally related to the injury at Gibsons. The court concluded that appellant Universal Underwriters Insurance Company was responsible for any compensation due respondent

and that the cause should be remanded to the Division in order to determine the extent of respondent's disability and the amount of her award.

It is from this decision that appellants appeal.

Two issues are presented to us for review: (1) Did the district court abuse its discretion in admitting additional evidence? (2) Was there a preponderance of credible evidence to support the findings and conclusions of the district court?

A district court has authority to take "additional evidence" in the workmen's compensation cases it hears on appeal from the Division. Section 92-834, R.C.M. 1947 provides:

> " * * * The court may, upon the hearing, for good cause shown, permit additional evidence to be introduced, but, in the absence of such permission from the court, the cause shall be heard on the record of the board, as certified to the court by it. The trial of the matter shall be de novo, and upon such trial the court shall determine whether or not the board regularly pursued its authority, and whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case."

It should be noted that appellants timely objected to all the "additional evidence" in the instant case--the testimony of respondent, Adams, Holdsworth, and Dr. Humberger.

We think respondent's testimony as a whole is beyond the scope of "additional evidence" as that term is used in the statute. Except for clarifying a few dates and relating the fact of her subsequent back operation, respondent simply gave a repeat of her performance before the Division. Similar testimony has met with our approval in the past, but only because of exigent circumstances not present here. See, for example, Best v. London Guarantee & Acc. Co., 100 Mont. 332, 47 P.2d 656 (claimant neither personally present nor represented by counsel, board's decision denying compensation was based on insurance carrier's version

of the facts) and Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 P.2d 1145 (claimant not represented by counsel at board hearing, evidence adduced was so incomplete and confusing that an intelligent decision could not have been reached).

On the other hand, the testimony of Adams, Holdsworth, and Dr. Humberger is additional evidence for good cause shown. Dr. Humberger did nothing else than report respondent's medical condition from the close of the Division hearing to the date of the district court hearing. It is well settled that the district court may receive evidence bringing the factual record up to date. Sykes v. Republic Coal Co., 94 Mont. 239, 244, 22 P.2d 157. Appellants contend that respondent was negligent in failing to have Adams and Holdsworth testify before the Division and consequently has not demonstrated "good cause" under section 92-834, R.C.M. 1947. Had these witnesses merely corroborated respondent's testimony that she often suffered back pain after the injury at Gibsons in 1969, we might be inclined to agree. However, Adams and Holdsworth also spoke to the important issue of whether there was an intervening injury which could have been responsible for respondent's back trouble. The testimony of Holdsworth is particularly significant in this regard:

> "Q. Prior to Mrs. Rasmussen commencing work for you, did she tell you about any of her previous background? A. Yes. She applied for the job and I told her we would like her to look over the job and see what she was expected to do. She did come out and overlook the work. She told me at that time she had been injured while working at Gibsons, that she thought she would be able to handle the job, and she would like to try.

> "Q. Did she say anything about her back bothering her at that time? A. Not specifically at that particular time. She said she had been injured at Gibsons, and that her back had bothered her. And again she didn't say it was at that particular time. She just said she hoped she would be able to handle this particular work.

> " * * *

- 5 -

"Q. After she worked for you for awhile, did she complain about her back? A. Yes, she did.

"Q. Do you recall when this was, first? A. She complained of her back just gradually. And in watching her work, I could see her back was bothering her. We began to restrict the type of work that she was doing. In other words, there are certain jobs in the processing plant, the candling job, there is no lifting at all. In unloading the egg processing machines, the lifting is very restricted. We began to restrict the amount of the area in which she worked. She began to complain very severely of her back problems after she came back from this vacation. Her work then was restricted entirely to the candling. And after a short while, it became apparent she couldn't do that, and had to quit." (Emphasis added)

Obviously this testimony lends independent support to Dr. Humberger's opinion that a causal relationship existed between respondent's back trouble in 1972 and her injury at Gibsons in 1969. In short, the testimony took on added relevance in light of what Dr. Humberger had to say at the district court hearing. Respondent could not reasonably have forseen this at the time the Division conducted its proceedings; accordingly, appellants' objection on this point is not well taken.

We think the district court could find a preponderance of credible evidence to sustain respondent's claim, both from the additional evidence presented at the district court hearing and the record of the Division.

The crucial element of respondent's case was whether she could show that her back trouble in 1972 was causally related to her injury at Gibsons in 1969. Dr. Humberger testified at the district court hearing that in his opinion, based on a medical history of respondent and the fact of her operation for a herniated disc, such a causal relationship did indeed exist. This opinion was supported not only by the testimony of Adams and Holdsworth, as discussed above, but also by two other doctors. Dr. De Heetderks wrote a letter dated September 1, 1972, to Douglas Drysdale, respondent's attorney, wherein he stated in substance

- 6 -

that in 1969 he felt respondent's injury at Gibsons was relative-
ly minor and apparently resolved itself; that his examination
of respondent in 1972 was inconclusive as to the nature and
cause of her back difficulties then; and that he referred respon-
dent to Dr. Varberg who, after examination, felt she might have
some discogenic disease.  The last paragraph of this letter,
however, qualifies any uncertainties Dr. De Heetderks may have
had and clearly supports Dr. Humberger's opinion:

> "It is difficult to say with certainty whether
> or not the low back trouble of October, 1969 is
> related to the July, 1972 back problems.  How-
> ever, if the patient truly does have discogenic
> disease in the low back area, it very probably
> is related.  I would encourage you to consult
> with Dr. Varberg on this matter."  (Emphasis
> added)

On October 6, 1972, Dr. Varberg also wrote to Drysdale and related
his examination of respondent.  He concluded with this paragraph:

> "It is highly likely there is a causal relation-
> ship between the accident of October 14, 1969 and
> her present condition.  If she does undergo a
> myelogram and this is positive toward this disease
> then it would be my opinion that there is a direct
> causal relationship between the incident of October
> 14, 1969 and her present condition.  I would have
> to reserve an absolute definite opinion, however,
> until the myelogram was accomplished."  (Emphasis
> added)

While the results of the myelogram were not positive, there is
no getting around the fact that respondent in November, 1973, was
found to have a herniated disc and underwent surgery for that
reason.  It does not seem unfair to say Dr. Varberg would concur
in Dr. Humberger's opinion as to the cause of respondent's back
trouble.

The Division in deciding against respondent apparently
gave considerable weight to the fact that before filing the present
claim against Gibsons respondent filed a claim against Holdsworth
who carried no workmen's compensation insurance.  This action
might imply that respondent was aware she suffered a new injury

while working at Holdsworth's and that the claim against Gibsons was founded upon something less than good faith. At the Division hearing respondent explained she really did not know the correct procedures for filing a workmen's compensation claim; but the Division was not convinced. However, we think the record is replete with evidence from which the district court could find assurance respondent was telling the whole story. For one thing, both Adams and Holdsworth testified that respondent complained of back trouble during her employment with Artcraft and the egg farm. For another, the Division's interoffice communications of July 10 and July 28, 1972, reveal that respondent phoned the office to inquire about eligibility for workmen's compensation benefits, saying she "(was) having difficulty with her back resulting from her accident of October 14, 1969" and "did not feel she had a new injury but that it was a recurrence of the accident she had on October 14, 1969, while employed by Gibsons.* * *".

The case of Vetsch v. Helena Transf. & Stor. Co., 154 Mont. 106, 460 P.2d 757, was relied on by the Division as controlling, but in our view this reliance is misplaced because of factual distinctions from the instant case. Vetsch involved a workmen's compensation claimant who in 1964 fell on a flight of stairs. He claimed injuries to his back and elbows, but the accident was not reported or compensated as an industrial accident. Eventually he quit Helena Transfer & Storage over a commission dispute. Thereafter during a period of more than two years claimant worked for nine firms as a heavy construction worker. He never complained to any of these employers of back trouble, nor did he ever give it as a reason for quitting. During the winter of 1967, claimant strained his back while shoveling snow. In holding that claimant failed to show the 1964 fall was the proximate cause of his present condition, the Court stressed the fact that claimant

- 8 -

subsequently performed heavy construction work and his working ability was not impaired until after the winter of 1967. Here the situation is very different: (1) respondent suffered a previous industrial accident and received benefits therefor; (2) she thereafter regularly complained of back trouble to subsequent employers; and (3) she attempted to do only relatively light work, and her back would not even permit her to do that for any length of time.

The judgment of the district court is affirmed.

------------------------------
                                              Chief Justice

We concur:

------------------------------------

------------------------------------

------------------------------------

------------------------------------
  Justices

- 9 -