No. 12792

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

MARTIN BEATTY,

Claimant and Respondent,

-vs-

WELLMAN POWER AND GAS, INC., and
TWIN CITY FIRE INSURANCE COMPANY,

Defendant and Appellant.

---

Appeal from: District Court of the Third Judicial District,
Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

For Appellant:

McKeon and Skakles, Anaconda, Montana
Michael J. McKeon argued, Anaconda, Montana

For Respondent:

Scanlon, Brolin and Connors, Anaconda, Montana
Jack M. Scanlon argued, Anaconda, Montana

---

Submitted: May 7, 1975

Decided: JUL 8 1975

Filed: JUL 8 1975

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is a workmen's compensation case arising from an industrial accident that allegedly occurred on November 13, 1972. Claimant Martin T. Beatty was employed as a pipefitter by Wellman Power and Gas, Inc. The Montana Workmen's Compensation Division (hereinafter referred to as the Division) held that claimant failed to establish, by a preponderance of the credible evidence, that an industrial accident had in fact occurred and denied compensation.

On appeal to the district court, Deer Lodge County, additional evidence was presented and that court found an industrial accident had occurred and remanded the matter to the Division for establishment of claimant's disability and determination of the medical payments and award due him. From the district court's judgment Wellman Power and Gas, Inc. and its insurer, Twin City Fire Insurance Company, appeal. Prior to the perfection of this appeal claimant died from causes unrelated to the accident.

Martin T. Beatty claimed he suffered an industrial accident on November 13, 1972. Describing that accident he testified: "We were pulling a pipe with a come-along and it pinned me against the wall." He claimed he reported the accident to his employer on that date, November 13, 1972. The "Employer's First Report of Occupational Injury or Disease" filed with the Division on January 12, 1973, put the allegations of the claim in issue by answering this question on the form:

> "Describe in full how accident happened and GIVE CAUSE--
> Tell what employee was doing when injured:
>
> A. "We cannot describe accident because it was not reported to this office, and we will not acknowledge its happening on this job. This report made per Hartford request."

Claimant here, a former police officer retired on a total disability claim from the police pension fund, had filed three prior industrial accident claims and at the time of the alleged accident here had been the recipient of a settlement representing 233 weeks of compensation for a total of $10,500 received on April 27, 1972.

The record indicates that claimant did not seek medical attention until November 22, 1972, nine days after the alleged injury, when he was admitted to the Anaconda Community Hospital under a diagnosis of "pneumonia", with this brief history--patient admitted to emergency room per wheel chair--complains of pain in back--dyspnea--coughing--feet swollen--has been drinking for two weeks.

Several issues are presented by both parties on appeal. We find this issue dispositive:

Did the district court err in reversing the Division's finding that an industrial accident had not occurred?

We note here that in Montana it is clearly established the district court is justified in reversing the findings of the Division only when there exists a clear preponderance of the evidence against its findings. McAndrews v. Schwartz, 164 Mont. 402, 523 P.2d 1379, 31 St.Rep. 517; Jones v. Bair's Cafes, 152 Mont.13, 445 P.2d 923; Stordahl v. Rush Implement Co., 148 Mont. 13, 417 P.2d 95. Consequently a detailed presentation of the evidence before the Division is crucial for a proper disposition of this case.

The principal issue before the Division was whether claimant had, in fact, suffered an industrial accident with resultant injury as contemplated by section 92-418, R.C.M. 1947. To substantiate his claim an accident had occurred claimant introduced his own testimony and that of Ed Darcy and Alvin Palmer.

Ed Darcy, a co-worker with claimant on the date of the alleged accident, explained the accident in this manner:

> "Yes, I raised a piece of pipe, it seems to me it was pretty heavy, it was pretty long and we were raising it up and Beatty was holding on to it and it was swinging and it is vague, but I can remember the pipe swinging and him backing up against the wall."

However, on cross-examination Darcy testified:

> "MR. MCKEON: Ed, we had a telephone conversation two days ago, didn't we? A. Right.
>
> "Q. And you told me at that time your particular version of the event, didn't you? A. I think I told you that I didn't remember the accident.
>
> "Q. You also had a conversation with the adjuster from the insurance company, didn't you, sometime after the date of November 13, 1972? A. Right.
>
> "Q. And at that time I believe you told the insurance representative-----
>
> "* * *
>
> "Q. At that time did you tell him you didn't remember anything about this accident? A. I believe that is what I said.
>
> "Q. You said that, didn't you? A. Yes.
>
> "Q. And at that time you said that you believed that no accident in fact happened, isn't that correct? A. Well, let me put it this way, the accident, it seemed so out of proportion, it didn't seem like an accident, I didn't say anything."

Still later during cross-examination, this information was elicited:

> "You received a phone call from Mr. Beatty some couple of weeks after the alleged accident, didn't you? A. Right.
>
> "* * *
>
> "Q. And at that time didn't you tell me that you felt that Mr. Beatty was trying to coerce you into saying there was an accident? A. No, I didn't say that, I said he was trying to influence me.
>
> "Q. Into saying that there was in fact an accident? A. Yes."

Claimant's second witness was Alvin Palmer, foreman at Wellman Power and Gas, Inc. He testified he was not present when the alleged accident occurred but he had asked claimant later that

day "if he was sick or something or had a bad hangover or something." He further testified claimant appeared to have "a stomach-ache or out of wind or something like that."

When claimant testified on his own behalf, he explained the alleged accident this way:

> "Well, in pulling this 14 inch cast iron over the top of the tanks and the other pipes why Charlie Hubbard said that he didn't believe that we could hold it back without coming over the other pipes and we had a plank from the top over to the wall on a beam and I was standing out on this plank and when they raised it up and the fittings come in I couldn't hold it back and it backed me up against the wall."

Claimant also testified he was hospitalized on November 22, 1972, some nine days after the alleged accident occurred. However, the record indicates claimant's affliction was diagnosed as pneumonia at the time of his hospitalization.

Dr. Howard Mize, Don Hornbacher, Jack Somers and Robert Wolf testified for defendants.

Dr. Mize testified he examined claimant subsequent to the alleged accident when claimant was complaining of low back pain, difficulty in his gait and lack of sensation in his extremities; that claimant had quite an extensive history in regard to his back relating back to 1967, when he was examined and treated by Doctors Sereen and Davidson. In 1969, back difficulties again compelled claimant to see Dr. Trobough who gave him a 40% disability rating. Again, in 1971 and in 1972, claimant was treated by Drs. Simms and Kanty in regard to his back. All of this medical history was prior to November 13, 1972, the date of the alleged accident involved here.

In addition to his testimony Dr. Mize wrote a letter to defendants' attorney which was received into evidence by the Division. That letter stated:

> "In addition, in view of the nature of the accident that Mr. Beatty described to me it seems unlikely that this trivial injury in itself could have produced all of the pathology that Mr. Beatty claims."

- 5 -

Jack Somers, a foreman at Wellman/and Gas, Inc. at the time
[Power inserted above between Wellman and and]
of the alleged accident, testified that he was never notified about
an accident. He testified:

"Q. Were any phone calls ever made to you after
the alleged accident? A. Yes.

"Q. Who called You? A. Mr. Beatty called me and
one of his lawyer's secretaries called me.

"Q. What did Mr. Beatty say to you? A. He wanted
to know if I could help him with his accident.

"Q. What did you say? A. I said I knew nothing
about it because it never was reported to me.

"Q. Did he try to talk you into saying there was an
accident? A. Yes."

Finally, Robert Wolf, then general foreman of the pipe
crew at Wellman Power and Gas, Inc., testified he was/notified of
[not inserted above between was/ and notified]
an accident on November 13, 1972. He further stated he had seen
claimant at the end of the work day on that day and his condition
was "Just like everybody else hurrying to get to the parking lot
* * *."

After all evidence was submitted, the Division entered
its findings of facts and conclusions of law. It held that the
claimant did not suffer an industrial accident. Compensation was
denied.

Claimant then appealed to the district court. That court
heard testimony of claimant and his wife, who did not testify at
the Division hearing. Defendant Wellman Power and Gas, Inc. argues
the wife's testimony was hearsay and that defense counsel objected
at the hearing before the district court. However, it is of interest
to note that the wife acknowledged, during testimony, that her
husband's back problem predated the date of the alleged accident.
The district court reversed the findings of the Division.

Reviewing all of the evidence, we believe the district
court erred in reversing the findings of the Division. The
evidence does not clearly preponderate against those findings.

The inconsistencies and vagueness of claimant's witnesses, combined with the attempts to influence their testimony and claimant's failure to see a doctor until nearly nine days had elapsed with the subsequent diagnosis of pneumonia, clearly support the Division's decision. The Division occupied a far better position to make the crucial factual determination of whether an industrial accident had in fact occurred. It could observe the demeanor of the witnesses and determine their credibility.

We are cognizant of the rule that the district court may reverse the Division only if substantial evidence clearly preponderating against the findings is introduced in the district court. Rumsey v. Cardinal Petroleum, _____ Mont. _____ 530 P.2d 433, 32 St. Rep. 1, and cases cited therein. However, in the instant case, the additional testimony added little or nothing to the testimony presented before the Division. Claimant retestified as to the facts of the alleged industrial accident but his testimony was merely a "rehash" of the testimony presented before the Division. Similar testimony met with disapproval in Rasmussen v. Gibson Products Co. of Bozeman, _____ Mont. _____, 527 P.2d 563, 31 St.Rep. 860. Claimant's wife also testified before the district court. Her testimony was that claimant had experienced pain in his lower back on the date of the alleged accident. However, no effort was made to determine if the back pains were caused by the alleged accident or whether they were the result of claimant's long history of back problems.

We find the other contentions raised by claimant to be without merit. The district court erred when it reversed the Division's findings. The evidence did not clearly preponderate against those findings.

The judgment of the district court is reversed and the cause is dismissed.

_____
                                   Justice

- 7 -

We Concur:

_James T. Harrison_
Chief Justice

_Gene B. Daly_

_Frank I. Haswell_

_Wesley Castles_
Justices.