WEAKLEY, Respondent, v. COOK, et al., Appellants.

No. 9178.

Submitted October 21, 1952.   Decided November 14, 1952.
As amended on Denial of Rehearing November 26, 1952.

249 Pac. (2d) 926.

Mr. Franklin S. Longan, Mr. Charles F. Moses, and Mr. Robert L. Jones, Billings, for appellant.

Mr. Thomas C. Colton, Billings, for respondent.

Mr. Longan and Mr. Colton argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal from a judgment of the district court of

Yellowstone county, affirming an order of the industrial accident board granting compensation to Mrs. Agnes Weakley, widow of Glen Weakley, deceased.

On February 23, 1950, Glen Weakley was in the employ of Bruce Cook, who operated a transfer company at Billings, Montana, and who was covered by and operating under plan two of the Workmen's Compensation Act of the state of Montana, with the Idaho Compensation Company as insurance carrier. Mr. Weakley had worked for Mr. Cook continuously for some 17 years prior to February 22, 1950. At all times prior to February 22, 1950, Mr. Weakley had been a strong, healthy and hard worker, driving a dray or van and loading and unloading articles as are usually transported by a transfer company.

On February 22, 1950, Weakley, while so employed and in the course of his employment, and while unloading steel bars from his van, inserted a hook behind the wire on the bar or angle iron which weighed about 200 pounds, and while trying to pull the bar the wire broke, causing Mr. Weakley to fall over backwards on his back. Shortly thereafter Weakley became sick, with an outward appearance of paleness and profuse perspiration. He was taken home where a short time later he was found unconscious with his tongue hanging out. Dr. Phillip E. Griffin was called and the doctor found the patient suffering from concussion with delayed shock and a bruised left shoulder. The doctor prescribed medicine and advised bed rest with ice packs to his head and ordered Weakley to remain away from work. Weakley was attended by his doctor several times thereafter and on March 2, 1950, Dr. Griffin permitted Weakley to return to work. Dr. Griffin found that Weakley had arteriosclerosis. Weakley returned to work, but on account of his condition his employer assigned him to lighter work.

On the evening of April 18, 1950, Mr. Weakley had another attack and Dr. Griffin was called. Upon his arrival he pronounced Weakley dead. In Dr. Griffin's opinion the cause of death was coronary thrombosis.

Agnes Weakley, widow of Glen Weakley, filed her claim with the industrial accident board and thereafter the board held a hearing, and after hearing the evidence entered its findings and order in favor of the claimant and against the insurance carrier. The carrier made application for a rehearing which was denied by the board. The insurer then appealed to the district court. The district court, after considering the testimony before the board and additional testimony given before the court, entered its findings of fact, conclusions of law and judgment affirming the order of the board. From that judgment the defendants appeal.

It is conceded that Glen Weakley was an employee of Bruce Cook; that Weakley suffered an injury resulting from an industrial accident on February 22, 1950, arising out of and in the course of his employment; and that he died on April 18, 1950.

The question for determination is as to whether or not the injury received from the accident of February 22, 1950, was a contributing factor and the proximate cause of his death.

The evidence clearly shows that for some 17 years prior to and up to the time of the accident Glen Weakley was a strong, hard working man, doing heavy manual labor. John Bruce Cook, Jr., son of the owner of the Bruce Cook Transfer, testified:

"Q. You had a chance to observe Mr. Weakley in his work and his physical condition for a great many years prior to the date of his injury on February 22, 1950? A. Yes, sir.

"Q. What sort of a man was he from a healthy, physical standpoint? A. Well, to my way of thinking, he was, for a man his age, he was in very good shape and he was a very good worker. Sometimes I thought he was too good a worker, too loyal, very loyal to the company, very much so.

"Q. You observed him performing his duties in that respect for probably thirteen to fifteen years prior to his death? A. That's right. * * *

"Q. You had the opportunity to observe him after he returned to work after the accident, two weeks after February 22nd, around the first part of March; what have you to say

as to his working capabilities and general physical condition?
A. Well, some days he was fairly good. But he complained
of his shoulder and his arm and his chest, but he still tried to
do his work. But he definitely wasn't in too good a shape.

"Q. In other words, he wasn't the physical man he was before?
A. No, decidedly not.

"Q. And during that time you saw him every day, every
working day? A. Yes, every working day.

"Q. Is there anything you could add for the help of the
board in deciding this case? A. Well, I just don't know what
to say, but I think he definitely had been injured, and whatever
took him at the time he left us was—came from his accident.''

Mrs. Agnes Weakley, widow of the deceased, testified, *inter
alia,* that Mr. Weakley after he returned to work and before
he died had four or five spells during which he would gasp for
breath; he complained of severe pain in his breast and in his
shoulder.

The expert testimony of the doctors of medicine in the record
is lengthy and in conflict. It would serve no useful purpose
to set it out at length. The medical testimony briefly was as
follows:

Dr. Phillip E. Griffin, witness for claimant, testified that in
his opinion the accident of deceased and its effect on him of
the injury was the inciting factor in the cause of the coronary
thrombosis.

Dr. R. E. Bragan, witness for plaintiff, after hearing the
testimony of Dr. Griffin and the other witnesses for claimant
before the board, gave his opinion that cause of death was
coronary thrombosis, which was precipitated by the injury. The
doctor based his opinion on the close proximity from the time
or date of the injury and time of death.

Dr. Sidney A. Cooney, witness for the insurance carrier, gave
his opinion to the effect that there was no connection between
deceased's injury and his death.

At the hearing before the court, Dr. John C. Pomers, witness

for the plaintiff, gave as his opinion that the accident and injury started the symptoms that led to the occlusion.

Dr. Harold E. McIntyre, witness for the insurance carrier, testified that in his opinion there was no connection between the injury of deceased and the coronary thrombosis. However, on cross-examination the doctor in answer to the question stated as follows: "Q. It is possible that the injury which he received could have precipitated or contributed to the cause of the death of Mr. Weakley? A. Oh, it is possible, but in my opinion, it is highly improbable."

Dr. Frederick S. Marks and Dr. Harold W. Gregg, both witnesses for the insurance carrier, gave as their opinion that there was no connection between the accident and the death of deceased.

The board and the court had a right to consider all of the circumstances as well as the direct evidence. The law does not require demonstration or such a degree of proof as, excluding the possibility of error, produces absolute certainty, because such proof is rarely possible. See Moffett v. Bozeman Canning Company, 95 Mont. 347, 26 Pac. (2d) 973; Williams v. Brownfield-Canty Carpet Co., 95 Mont. 364, 26 Pac. (2d) 980.

The law makes no distinction in weighing evidence between expert testimony and evidence of other character. It is for the trier of the facts to determine the weight to be given to any evidence. The fact that an employee was suffering from a disease or disability does not preclude compensation if the disease or disability was aggravated or triggered or incited by an accidental injury which arose out of and in the course of the employment. Compare Moffett v. Bozeman Canning Co., supra; Donlan's Case, 317 Mass. 291, 58 N. E. (2d) 4; Brown v. Minneapolis Board of Fire Underwriters, 210 Minn. 529, 299 N. W. 14; Lockwood v. Parker, 132 N. J. L. 482, 41 A. (2d) 204.

In passing upon issues of fact the trier, whether jury, board or judge, passes upon the credibility of the witnesses and the weight to be given to their testimony. Where, as here, the evidence is conflicting, the resolution of such conflicts is for

the trier of the facts and where there is evidence to sustain its determination it will not be disturbed on appeal.

We find nothing in the record or in the arguments advanced ▉ on appeal which would warrant or permit us to disturb the order of the board or the court's findings of fact, conclusions of law and judgment. In our opinion there were facts and pertinent circumstances, if believed, to amply and reasonably support the same. Therefore, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, FREEBOURN and ANGSTMAN, concur.