No. 12699

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

CECIL J. RUMSEY,

Claimant and Respondent,

-vs-

CARDINAL PETROLEUM, Employer and
GLACIER GENERAL ASSURANCE COMPANY,

Respondent and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Crowley, Kilbourne, Haughey, Hanson and Gallagher,
Billings, Montana
Bruce R. Toole, argued, Billings, Montana

For Respondent:

Michael J. Whalen argued, Billings, Montana

---

Submitted: November 13, 1974

Decided: JAN 2 1975

Filed: JAN 2 1975

*Thomas J. Kearney*
_____ Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Yellowstone County, which reversed an order of the Workmen's Compensation Division and held in favor of the claimant, Cecil J. Rumsey.

On January 10, 1970, Cecil Rumsey, an employee of Cardinal Petroleum Company, suffered an injury while working as a "roughneck" on an oil well. The accident occurred when a driller started a winch while claimant was attempting to connect a set of tongs to the drill stem of an oil well. Claimant was jerked across the platform of the oil rig and sustained injuries to his right arm, shoulder and chest. Claimant's hospital and surgery costs in the amount of $6,413.70 were paid by appellant. Weekly compensation benefits were paid from January 17, 1970 through February 4, 1970 and from February 2, 1971 through October 14, 1971, for a total of 39-1/7 weeks, in the amount of $1,695.71.

After a short period of recuperation, claimant quit his job at Cardinal Petroleum Company and went to Wyoming where he worked as a plasterer. During this period of time, he complained of an extensive ache in his right side and arm, along with chills and fever. He also found it difficult to breathe and experienced a sharp pain in his chest when he overexerted himself.

On October 7, 1970, claimant was admitted to the intensive care unit of a Wyoming hospital after having suffered severe chest pains. Claimant's illness was diagnosed as myocardial ischemia, a condition that has caused claimant to become permanently disabled.

Ischemia is a condition where there is an obstruction of the blood flow through the coronary arteries resulting in the lack of an adequate blood supply to the heart muscle. If the condition is extensive, angina pectoris or an oppressive pain

under the breastbone results.

On March 19, 1971, claimant underwent surgery to restore the capacity of his right lung which had become severely compromised as a result of the industrial accident. The medical testimony presented to the Workmen's Compensation Division disclosed that the industrial accident had caused the claimant to suffer internal bleeding which had caused his right chest cavity to become filled with blood. The blood eventually formed a restrictive casing around the right lung and prevented it from functioning properly. The operation removed this thick casing of blood or pleura and the right lung was expanded.

On September 29, 1971, claimant petitioned the Workmen's Compensation Division to be declared permanently disabled and to be awarded a lump-sum settlement.

The crucial issue presented to the Workmen's Compensation Division was whether the industrial accident coupled with the compromised right lung and the resultant physical and emotional stress, had accelerated or aggravated the claimant's preexisting condition of myocardial ischemia.

During the hearing the depositions of two physicians, Doctor Movius and Doctor Roussalis were introduced.

Doctor Movius testified:

"Q. Now, backing up a little, and having in mind the condition of this lung during the 14 months before surgery, would the condition that existed there during that period of time impose any limitation upon the oxygen supply that would be furnished to the heart? A. Yes, sir.

"Q. And what would be the nature of that limitation? A. Well, as I mentioned earlier, it would be my opinion that the patient would actually be functioning with less than one lung inasmuch as the right one was completely constricted and very probably pushed somewhat to the left and limiting the function of the uninjured lung, so that so far as the total oxygenation is concerned under stress, he probably had less than 50% oxygenation to his body than was possible under maximum conditions before the injury.

- 3 -

"Q. And during this period of time when he was attempting to work he was under stress, is that correct? A. I don't think there is any doubt about it.

"Q. And with that limitation and stress, would that put any stress upon other vital organs of the body? A. I think so.

"Q. And which one? A. Primarily the heart.

"Q. Now, could you tell us, please, whether or not after the performance of this surgery there would now be any limitation of the oxygen supply to the heart because of this condition, as distinguished from what it would have been prior to the time of injury? A. Yes, there is some limitation, but not nearly so great as before. According to the tests, we find that, according to the average individual, he has 85% as much as a normal individual since the operation. But prior to the operation, I would estimate that it was somewhere in the region of 40 to 45%.

"Q. And what would cause the continued limitation of oxygen to the heart after the surgery has been completed, the healing period past? A. Well, I think that any stress phenomenon that any individual endures--and at this period of life we all know that there is a narrowing of your blood vessels and many people don't live to be at the age of many of us are. And if I may go into his history, the fact that he had a coronary problem in October of 1970, I think there is no question that the fact that he worked for approximately nine months with less than one lung greatly aggravated his probable present existing coronary narrowing and was largely responsible for the occurrence of his coronary at that time because of the continued vigorous work which he did with a markedly compromised-oxygen supply."

Doctor Roussalis testified:

"Q. Then, Doctor, you explained in your opinion, your written opinion which is now attached to Doctor Movius' deposition, and I will quote, 'EKG revealed the patient to have myocardial ischemia which is not related to this injury and which will be of permanent nature'. I will just simply as you (sic), are you still of that opinion, and that is, the ischemia is not related to the injury which has been described in your history and for which this claim is made? A. That is correct.

"Q. And it is your opinion, then, if I understand you, this is a developmental disease of aging of our society? A. Correct."

When the hearings examiner was confronted with the conflicting medical testimony, he decided to send pertinent portions

of the file to an independent physician, Doctor Goulding, for his opinion. Doctor Goulding's two page report was sent by the hearings examiner to respective counsel along with a letter stating the report would be utilized in reaching a decision. Doctor Goulding's report stated, inter alia, that lung disease and emotional trauma were not factors in accelerating mycardial ischemia.

Upon receipt of this report, claimant's counsel wrote to the hearings examiner objecting to the use of evidence outside of the record and requesting the opportunity to cross-examine Doctor Goulding and to obtain additional medical testimony to rebut his findings.

On October 30, 1972, the hearings examiner denied compensation to claimant without affording him the opportunity to cross-examine Doctor Goulding and to rebut his findings.

Thereupon, claimant appealed to the district court which heard additional testimony from Doctor Movius and reversed the findings of the Division. The employer and its insurance company appealed.

The issues are:

1. Did the Division err in denying claimant an opportunity to cross-examine Doctor Goulding and to rebut his findings?

2. Did the district court err in reversing the findings of the Division?

Issue 1. We note the rules of evidence are more relaxed in an administrative proceeding than in a court of law. Section 92-812, R.C.M. 1947; Ross v. Industrial Accident Board, 106 Mont. 486, 80 P.2d 362; Bergan v. Gallatin Valley Mlg. Co., 138 Mont. 27, 353 P.2d 320. However, these rules will not be relaxed to the point where due process of law and the fundamental rights of the injured workmen are disregarded.

In Mulholland v. Butte & Superior Min. Co., 87 Mont.
561, 289 P. 574, two referee physicians were selected by the
Industrial Accident Board to render an opinion after the board
was unable to reach a decision because of conflicting medical
testimony. A written report favoring the claimant was submitted.
Accordingly, the board found the claimant was totally disabled
and awarded him compensation. Thereupon, the defendant company
perfected an appeal to the district court which upheld the
decision of the board after additional evidence was heard. This
Court conceded the board had erred in depriving defendants of
their right to cross-examine the physicians. However, the dis-
trict court was not held in error because it was presumed that
it had considered only competent testimony and had ignored the
reports.

3 Larson, Workmen's Compensation Law, § 79.63, states:

"Under the increasingly common practice of referral
of claimant to an official medical examiner or an
independent physician chosen by the commission, it
is particularly important that commissions not lose
sight of the elementary requirement that the parties
be given an opportunity to see such a doctor's
report, cross-examine him, and if necessary provide
rebuttal testimony."

In Massachusetts Bond. & Ins. Co. v. Industrial Acc. Com'n,
74 C.A.2d 911, 170 P.2d 36,37, the California Industrial Accident
Commission referred a case to two independent physicians because
of conflicting medical testimony. Upon appeal, the petitioner
contended he had been denied due process of law when his request
for an opportunity to cross-examine the physicians and to produce
rebuttal testimony had been denied. The court agreed with his
contention and stated:

" * * * Even if regarded as a purely adminis-
trative agency, however, in exercising adjudi-
catory functions the commission is bound by
the due process clause of the fourteenth amend-
ment to the United States Constitution to give
the parties before it a fair and open hearing.

- 6 -

> 'The right to such a hearing is one of
> "the rudiments of fair play" (citation)
> assured to every litigant by the Fourteenth
> Amendment as a minimal requirement.' [Cases
> cited].
>
> "The reasonable opportunity to meet and rebut
> the evidence produced by his opponent is
> generally recognized as one of the essentials
> of these minimal requirements [Cases cited] and
> the right of cross-examination has frequently
> been referred to as another [Cases cited]."

For similar holdings see: Beeler v. Central Foundry Division, 32 Mich.App. 661, 189 N.W.2d 64; Hegglin v. Workmen's Compensation Appeals Board, 93 Cal.Rptr. 15, 480 P.2d 967; Chavez v. Industrial Commission, 5 Ariz.App. 294, 425 P.2d 864; North West Trailer Sales v. McCann, (Fla. 1968) 217 So.2d 310; Armes v. Pierce Governor Co., 121 Ind.App. 566, 101 N.E.2d 199; Puncec v. City and County of Denver, 28 Col.App. 542, 475 P.2d 359; Annotation, 109 ALR 598.

The Division erred in basing its decision upon an independent medical report made by a physician appointed by the Division, accompanied by denial of the right to cross-examine and rebut.

Issue 2. Section 92-834, R.C.M. 1947, provides the district court may consider additional evidence that was not before the Division. If this additional evidence is substantial, the district court may reverse the division even though the evidence before the Division preponderates in favor of the Division. Young v. Liberty Nat. Ins. Co., 138 Mont. 458, 357 P.2d 886; O'Neil v. Industrial Accident Board, 107 Mont. 176, 81 P.2d 688; Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 P.2d 1145. Furthermore, every presumption is in favor of the correctness of the district court's decision when additional evidence has been presented. Murphy v. Industrial Accident Board, 93 Mont. 1, 16 P.2d 705; O'Neil, supra; Mulholland, supra. With these principles in mind, we review the additional evidence presented.

Doctor Movius testified as to the lack of significance attributable to the fact that claimant had no enzyme change insofar as his diagnosis was concerned. He also testified claimant was not suffering from chronic lung disease, a factor relied upon by Doctor Goulding. At the time this matter came before the district court, counsel for appellants indicated to the court:

"MR. TOOLE:  * * * But I would like to indicate at this time that I may have a rebuttal witness who is not here and that would be Dr. Goulding who participated in this proceeding earlier as a consultant to the Industrial Accident Board, and I told Mr. Whalen that I would try to have him here this morning and to be honest about it I forgot to call Dr. Goulding and I am not really sure that I am going to need him in any case, so perhaps it's just as well not to have him sitting here. Now with that reservation and with the realization that I may make a request later, if necessary, to get some evidence from Dr. Goulding, we are ready.

"THE COURT:  Thank you. Mr. Whalen?

"MR. WHALEN:  For the record, Your Honor, and while I have it in mind it is not my purpose to limit the evidence before the Court, but when I talked to Mr. Toole on May 11, 1973 I told him at that time I intended to call Dr. Movius for additional testimony and if other medical witnesses were going to be called it was my desire that it be correlated at the time of the hearing so that the opportunity would exist to maybe put on a medical witness that I had for rebuttal in the event that it appeared necessary after the testimony of Dr. Goulding. In the event that Mr. Toole through his client is willing to pay for any additional charges that may be made to make Dr. Movius available at the time the testimony may be taken from Dr. Goulding, if it is going to be taken at some early date I would not resist it; on the other hand if Claimant is going to be expected to pay for making additional medical witness available at that time I would resist the request that is anticipated in Mr. Toole's statement.

"MR. TOOLE:  I will commit now that if we do this and if Mr. Whalen wants Dr. Movius present at that time, or to take Dr. Movius's time for subsequent deposition, we will undertake to pay the cost of that.

"THE COURT:  Very well.

"MR. TOOLE:  Not only his time but the cost of

- 8 -

the deposition as well.

"MR. WHALEN: With that, Your Honor, and the understanding that there will not be prolonged delay, I have no objection to it."

At the end of the hearing, counsel for appellants informed the court he did not want to call Dr. Goulding and no further effort was made for another hearing.

Dr. Movius also developed the significance of the lack of oxygen experienced by claimant as an influence upon the development of myocardial ischemia and stated that this factor can cause coronary damage whether there was a preexisting coronary disease or not. The testimony also pointed out the importance of physical and emotional stress in connection with the development of myocardial ischemia. We find such testimony to be both substantial and convincing.

We realize that in dealing with elusive diseases and in the effect of a traumatic injury in aggravating a preexisting disease, learned medical authorities often differ. It is our duty, however, to construe the Workmen's Compensation Act liberally so that the humane purposes of the Act can be carried out. Section 92-838, R.C.M. 1947. When there is a doubt, the doubt should be resolved in favor of the injured workman. Gaffney v. Industrial Accident Board, 129 Mont. 394, 287 P.2d 256.

Appellants throughout argument stressed that this Court should return the matter to the Division, citing Johnson v. Industrial Accident Board, 157 Mont. 221, 483 P.2d 918. In Johnson this Court returned the matter to the Division when it determined that medical evidence was admitted for the first time at the district court hearing. Such is not the fact situation here for Dr. Goulding's findings were considered by the Division's hearing examiner. He, not the district judge, brought the material into evidence, and the problems arose at the court hearing because Dr.

Goulding was not available for cross-examination.

Three recent cases are of import to our consideration here. McAndrews v. Schwartz, ____Mont.____, 523 P.2d 1379, 31 St.Rep. 517; Bagley v. Florence Hotel Co., ____Mont.____, 526 P.2d 1372, 31 St.Rep. 766; Rasmussen v. Gibson Products Co., ____Mont.____, 527 P.2d 563, 565, 567, 31 St.Rep. 860.

In McAndrews, after being denied compensation by the Board, claimant appealed to the district court which, upon hearing testimony of the claimant and Dr. Sims, who had not testified at the Board hearing, reversed the Board. Factwise the medical testimony involved was not sufficient to move this Court to hold that it was substantial. The district court's judgment was set aside and the order of the Division affirmed.

In Bagley, a latent injury case, the Division found that the employer was estopped to deny a claim after over a year had run. The district court overruled the Division and this Court upheld its ruling, noting that the trial court had properly found the evidence before the Division did not support the finding of equitable estoppel.

In Rasmussen, this Court upheld the district court's reversal of a denial of the claimant's petition. Speaking for this Court Chief Justice James T. Harrison noted:

> " * * * Respondent's testimony was more orderly than that heard by the Division, but in substance contained nothing new except for the fact she had undergone surgery for a herniated disc after the Division proceedings closed."

The Court further noted that such testimony as a whole was beyond the scope of "additional evidence" as the term is used by the statute but that the testimony of other witnesses, including her previous employers and the doctor who did the surgery, was admissible. The Court said:

> "Obviously this testimony lends independent support

- 10 -

> to Dr. Humberger's opinion that a causal relation-
> ship existed between respondent's back trouble
> in 1972 and her injury at Gibsons in 1969. In
> short, the testimony took on additional relevance
> in light of what Dr. Humberger had to say at the
> district court hearing. Respondent could not reason-
> ably have foreseen this at the time the Division
> conducted its proceedings; accordingly, appellants'
> objection on this point is not well taken.
>
> "We think the district court could find a pre-
> ponderance of credible evidence to sustain respond-
> ent's claim, both from the additional evidence
> presented at the district court hearing and the
> record of the Division."

That same argument can be made in the instant case for the findings of the district court.

Likewise, we have recognized the doctrine that an employee suffering from a preexisting condition is not denied compensation if the disability was aggravated or accelerated by industrial injury. In Birnie v. U.S. Gypsum Co., 134 Mont. 39, 328 P.2d 133, we affirmed an award where trauma had accelerated a preexisting arthritic condition. In Young, we affirmed an award where shock, anxiety and excessive exertion under trying circumstances aggravated an arteriosclerotic condition. Furthermore, in Weakley v. Cook, 126 Mont. 332, 249 P.2d 926, we affirmed an award where a workman suffering from arteriosclerosis had sustained a fall and had died from coronary thrombosis. We believe the same principle applies to the instant case.

The judgment of the district court is affirmed.

_____John Conway Harrison___
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 11 -

Mr. Justice Wesley Castles dissenting:

I dissent. I would reverse the judgment and order the matter returned to the Workmen's Compensation Division for findings on the medical testimony.

Dr. Goulding, the independent medical expert relied on by the Division, testified the arteriosclerosis could not have been aggravated by the injury and resultant stress. Dr. Movius, at the hearing before the district court, did not, in my view, testify to any materially different or new matters. He merely disputed the other two doctors.

Dr. Goulding was not the defendants', appellants here, witness. He was the Division's witness. If the district court considered that Dr. Goulding's report was improperly received and therefore prejudicial, it should have remanded the matter to the Division so that claimant might have the opportunity of cross-examining Dr. Goulding. That is what I would now order. The majority opinion finds, on the first issue, that the Division erred in basing its decision upon an independent medical report made by a physician appointed by the Division and accompanied by denial of the right to cross-examine and rebut.

Absent the Dr. Goulding medical opinion, the district court simply chose the opinion of Dr. Movius as against the conflicting opinion of Dr. Roussalis. Whereas, the Division had chosen the opinion of Dr. Roussalis as bolstered by the independent opinion of Dr. Goulding. Remand to the Division is the proper remedy because this Court or the district court is otherwise placed in the position of having to pick and choose which of the conflicting opinions should be accepted. This is a task properly for the trier of fact and should not be determined on appeal. Remand is a well recognized technique for this situation. See Johnson v. Industrial Accident Board, 157 Mont. 221, 225,

- 12 -

483 P.2d 918, where this Court unanimously said:

> "Finally the scope of a district court's power to reverse an order of the Industrial Accident Board was described in Moffett v. Bozeman Canning Co., 95 Mont. 347, 351, 26 P.2d 973, as:
>
> "'The district court on appeal from the board is not justified in reversing a finding of the board unless the evidence clearly preponderates against such finding.' In fact, a ruling by the Industrial Accident Board is presumed to be correct, and in the instant case the only evidence heard by the district court that had not been heard by the Board in the 1965 hearing was the testimony of Dr. Itoh, previously referred to. Therefore, the evidence before the district court clearly did not preponderate against the Board's order of 1966, hence the ruling of the Board should have been affirmed in the district court.
>
> "The cause is reversed and remanded to the district court with directions to return the matter to the Industrial Accident Board for its further consideration with regard to the specific injury statute application."

See also: Dean v. First Trust Company, 152 Mont. 469, 452 P.2d 81.

To the same effect are the three cases cited in the majority opinion, McAndrews, Bagley, and Rasmussen. The majority opinion walks away from the effects of this line of cases by finding that Dr. Movius's subsequent testimony was "substantial and convincing". Thus, this Court has now become the finder of fact in gauging the quality of medical opinion.

_Wesley Castles_
Justice

- 13 -