MR. JUSTICE JOHN C. HARRISON
delivered the Opinion of the Court.
This is an appeal from a judgment of the district court, Yellowstone County, which reversed an order of the Workmen’s Compensation Division and held in favor of the claimant, Cecil J. Rumsey.
On January 10, 1970, Cecil Rumsey, an employee of Cardinal Petroleum Company, suffered an injury while working as a “roughneck” on an oil well. The accident occurred when a driller started a winch while claimant was attempting to connect *19 a set of tongs to the drillstem of an oil well. Claimant was jerked across the platform of the oil rig and sustained injuries to his right arm, shoulder and chest. Claimant’s hospital and surgery costs in the amount of $6,413.70 were paid by appellant. Weekly compensation benefits were paid from January 17, 1970 through February 4, 1970 and from February 2, 1971 through October 14, 1971, for a total of 39% weeks, in the amount of $1,695.71.
After a short period of recuperation, claimant quit his job at Cardinal Petroleum Company and went to Wyoming where he worked as a plasterer. During this period of time, he complained of an extensive ache in his right side and arm, along with chills and fever. He also found it difficult to breathe and experienced a sharp pain in his chest when he overexerted himself.
On October 7, 1970, claimant was admitted to the intensive care unit of a Wyoming hospital after having suffered severe chest pains. Claimant’s illness was diagnosed as myocardial ischemia, a condition that has caused claimant to become permanently disabled.
Ischemia is a condition where there is an obstruction of the blood flow through the coronary arteries resulting in the lack of an adequate blood supply to the heart muscle. If the condition is extensive, angina pectoris or an oppressive pain under the breastbone results.
On March 19, 1971, claimant underwent surgery to restore the capacity of his right lung which had become severely compromised as a result of the industrial accident. The medical testimony presented to the Workmen’s Compensation Division disclosed that the industrial accident had caused the claimant to suffer internal bleeding which had caused his right chest cavity to become filled with blood. The blood eventually formed a restrictive casing around the right lung and prevented it from functioning properly. The operation removed this thick easing of blood or pleura and the right lung was expanded.
*20 On September 29, 1971, claimant petitioned the Workmen’s •Compensation Division to be declared permanently disabled and to be awarded a lump-sum settlement.
The crucial issue presented to the Workmen’s Compensation Division was whether the industrial accident coupled with the compromised right lung and the resultant physical and emotional stress, had accelerated or aggravated the claimant’s preexisting concD'.on of myocardial ischemia.
During the hearing the depositions of two physicians, Doctor Movi us and Doctor Roussalis were introduced.
Doctor Movius testified:
‘ ‘ Q. Now, backing up .a little, and having in mind the condition of this lung during the 14 months before surgery, would the condition that existed there during that period of time impose any limitation upon the oxygen supply that would be furnished to the heart? A. Yes, sir.
“Q. And what would be the nature of that limitation? A. Well, as I mentioned earlier, it would be my opinion that “the patient would actually be functioning with less than one lung inasmuch as the right one was completely constricted and very probably pushed somewhat to the left and limiting the function of the uninjured lung, so that so far as the total oxygenation is concerned under stress, he probably had less than 50% oxygenation to his body than was possible under maximum conditions before the injury.
‘ ‘ Q. And during this period of time when he was attempting to work he was under stress, is that correct? A. I don’t think there is any doubt about it.
“Q. And with that limitation and stress, would that put •any stress upon other vital organs of the body? A. I think so.
“Q. And which one? A. Primarily the. heart.
“Q. Now, could you tell us, please, whether or not after the performance of this surgery there would now be any limitation of the oxygen supply to the heart because of this condition, as distinguished from what it would have been prior to *21 the time of injury? A. Yes, there is some limitation, but not nearly so great as before. According to the tests, we find that, according to the average individual, he has 85% as much as a normal individual since the operation. But prior to the operation, I would estimate that it was somewhere in the region of 40 to 45%.
‘ ‘ Q. And what would cause the continued limitation of oxygen to the heart after the surgery has been completed, the healing period past ? A. Well, I think that any stress phenomenon that any individual endures—and at this period of life we all know that there is a narrowing of your blood vessels and many people don’t live to be at the age of many of us are. And if I may go into his history, the fact that he had a coronary problem in October of 1970, I think there is no question that the fact that he worked for approximately nine months with less than one lung greatly aggravated his probable present existing coronary narrowing and was greatly responsible for the occurrence of his coronary at that time because of the continued vigorous work which he did with a markedly compromised-oxygen supply.”
Doctor Roussalis testified:
“Q. Then, Doctor, you explained in your opinion, your written opinion which is now attached to Doctor Movius’ deposition, and I will quote, ‘EKG revealed the patient to have myocardial ischemia which is not related to this injury and which will be of permanent nature’. I will just simply as you (sic), are you still of that opinion, and that is, the ischemia is not related to the injury which has been described in your history and for which this claim is made? A. That is correct.
“Q. And it is your opinion, then, if I understand you, this is a developmental disease of aging of our society? A. Correct. ’ ’
When the hearings examiner was confronted with the conflicting medical testimony, he decided to send pertinent portions of the file to an independent physician, Doctor Goulding, for *22 Ms opinion. Doctor Goulding’s two page report was sent by the hearings examiner to respective counsel along with a letter stating the report would be utilized in reaching a decision. Doctor Goulding’s report stated, inter alia, that lung disease and emotional trauma were not factors in accelerating myocardial ischemia.
Upon receipt of this report, claimant’s counsel wrote to the hearings examiner objecting to the use of evidence outside of the record and requesting the opportunity to cross-examine Doctor Goulding and to obtain additional medical testimony to rebut his findings.
On October 30, 1972, the hearmgs examiner denied compensation to claimant without affording him the opportunity to cross-examine Doctor Goulding and to rebut his findings.
Thereupon, claimant appealed to the district court which heard additional testimony from Doctor Mbvius and reversed the findings of the Division. The employer and its insurance company appealed.
The issues are:
1. Did the Division err in denying claimant an opportunity to cross-examine Doctor Goulding and to rebut his findings?
2. Did the district court err in reversing the findings of the Division ?
Issue 1. We note the rules of evidence are more relaxed in an administrative proceeding than in a court of law. Section 92-812, R.C.M. 1947; Ross v. Industrial Accident Board, 106 Mont. 486, 80 P.2d 362; Bergan v. Gallatin Valley Mlg. Co., 138 Mont. 27, 353 P.2d 320. However, these rules will not be relaxed to the point where due process of law and the fundamental rights of the injured workmen are disregarded.
In Mulholland v. Butte & Superior Min. Co., 87 Mont. 561, 289 P. 574, two referee physicians were selected by the Industrial Accident Board to render an opinion after the board was unable to reach a decision because of conflicting medical testimony. A written report favoring the claimant was submitted. Accord *23 ingly, the board found the claimant was totally disabled and awarded him compensation. Thereupon, the defendant company perfected an appeal to the district court which upheld the decision of the board after additional evidence was heard. This Court conceded the board had erred in depriving defendants of their right to cross-examine the physicians. However, the district court was not held in error because it was presumed that it had considered only competent testimony and had ignored the reports.
3 Larson, Workmen’s Compensation Law, § 79.63, states:
“Under the increasingly common practice of referral of claimant to an official medical examiner or an independent physician chosen by the corn-mission, it is particularly important that commissions not lose sight of the elementary requirement that the parties be given an opportunity to see such a doctor’s report, cross-examine him, and if necessary provide rebuttal testimony.”
In Massachusetts Bond. & Ins. Co. v. Industrial Acc. Com’n, 74 Cal.App.2d 911, 170 P.2d 36, 37, the California Industrial Accident Commission referred a case to two independent physicians because of conflicting medical testimony. Upon appeal, the petitioner contended he had been denied due process of law when his request for an opportunity to cross-examine the physicians and to produce rebuttal testimony had been denied. The court agreed with his contention and stated:
“* * * Even if regarded as a purely administrative agency, however, in exercising adjudicatory functions the commission is bound by the due process clause of the fourteenth amendment to the United States Constitution to give the parties before it a fair and open hearing.
‘The right to such a hearing is one of “the rudiments of fair play” (citation) assured to every litigant by the Fourteenth Amendment as a minimal requirement.’ [Cases cited],
“The reasonable opportunity to meet and rebut the evidence produced by his opponent is generally recognized as one of the *24 essentials of these minimal requirements [Cases cited] and the right of cross-examination has frequently been referred to as another [Cases cited].”
For similar holdings see: Beeler v. Central Foundry Division, 32 Mich.App. 661, 189 N.W.2d 64; Hegglin v. Workmen’s Compensation Appeals Board, 4 Cal.3d 162, 93 Cal.Rptr. 15, 480 P.2d 967; Chavez v. Industrial Commission, 5 Ariz.App. 294, 425 P.2d 864; North West Trailer Sales v. McCann, (Fla.1968) 217 So.2d 310; Armes v. Pierce Governor Co., 121 Ind.App. 566, 101 N.E.2d 199; Puncec v. City and County of Denver, 28 Col. App. 542, 475 P.2d 359; Annotation, 109 A.L.R. 598.
The Division erred in basing its decision upon an independent medical report made by a physician appointed by the Division, accompanied by denial of the right to cross-examine and rebut.
Issue 2. Section 92-834, R.C.M. 1947, provides the district court may consider additional evidence that was not before the Division. If this additional evidence is substantial, the district court may reverse the Division even though the evidence before the Division preponderates in favor of the Division. Young v. Liberty Nat. Ins. Co., 138 Mont. 458, 357 P.2d 886; O’Neil v. Industrial Accident Board, 107 Mont. 176, 81 P.2d 688; Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 P.2d 1145. Furthermore, every presumption is in favor of the correctness of the district court’s decision when additional evidence has been presented. Murphy v. Industrial Accident Board, 93 Mont. 1, 16 P.2d 705; O’Neil, supra; Mulholland, supra. With these principles in mind, we review the additional evidence presented.
Doctor Movius testified as to the lack of significance attributable to the fact that claimant had no enzyme change insofar as his diagosis was concerned. He also testified claimant was not suffering from chronic lung disease, a factor relied upon by Doctor Goulding. At the time matter came before the district court, counsel for appellants indicated to the court:
*25 “MR. TOOLE: * * * But I would like to indicate at this time that I may have a rebuttal witness who is not here and that would be Dr. Goulding who participated in this proceeding earlier as a consultant to the Industrial Accident Board, .and I told Mr. Whalen that I would try to have him here this morning and to be honest about it I forgot to call Dr. Goulding .and I am not really sure that I am going to need him in any •case, so perhaps it’s just as well not to have him sitting here. Now with that reservation and with the realization that I may make a request later, if necessary, to get some evidence from Dr. Goulding, we are ready.
“THE COURT: Thank you, Mr. Whalen?
“MR. WHALEN: For the record, Your Honor, and while I nave it in mind it is not my purpose to limit the evidence before the Court, but when I talked to Mr. Toole on May 11, 1973 I told him at that time I intended to call Dr. Movius for additional testimony and if other medical witnesses were going to be called it was my desire that it be correlated at the time of the hearing so that the opportunity would exist to maybe put ■on a medical witness that I had for rebuttal in the event that it appeared necessary after the testimony of Dr. Goulding. In the event that Mr. Toole through his client is willing to pay for any additional charges that may be made to make Dr. Movius available at the time the testimony may be taken from Dr. Goulding, if it is going to be taken at some early date I would not resist it; on the other hand if Claimant is going to “be expected to pay for making additional medical witness available at that time I would resist the request that is anticipated in Mr. Toole’s statement.
“MR. TOOLE: I will commit now that if we do this and if Mr. Whalen wants Dr. Movius present at that time, or to take Dr. Movius’s time for subsequent deposition, we will undertake to pay the cost of that.
“THE COURT: Very well.
*26 “MR. TOOLE: Not only his time but the cost of the deposition as well.
“MR. WHALEN: With that, Your Honor, and the understanding that there will not be prolonged delay, I have no objection to it.” '
At the end of the hearing, counsel for appellants informed, the court he did not want to call Dr. Goulding and no further-effort was made for another hearing.
Dr. Movius also developed the significance of the lack, of oxygen experienced by claimant as an influence upon the-development of myocardial ischemia and stated that this factor can cause coronary damage whether there was a preexisting-coronary disease or not. The testimony also pointed out the importance of physical and emotional stress in connection with, the development of myocardial ischemia. We find such testimony to be both substantial and convincing.
We realize that in dealing with elusive diseases and in. the effect of a traumatic injury in aggravating a preexisting-disease, learned medical authorities often differ. It is our duty, however, to construe the Workmen’s Compensation Act liberally-so that the humane purposes of the Act can be carried out. Section 92-838, R.C.M. 1947. When there is a doubt, the doubt-should be resolved in favor of the injured workman. Gaffney v. Industrial Accident Board, 129 Mont. 394, 287 P.2d 256.
Appellants throughout argument stressed that this Court, should return the matter to the Division, citing Johnson v. Industrial Accident Board, 157 Mont. 221, 483 P.2d 918. In. Johnson this Court returned the matter to the Division when it determined that medical evidence was admitted for the first, time at the district court hearing. Such is not the fact situation here for Dr. Goulding’s findings were considered by the-Division’s hearing examiner. He, not the district judge, brought the material into evidence, and the problems arose at the court-hearing because Dr. Goulding was not available for cross-examination.
*27 Three recent cases are of import to onr consideration here. McAndrews v. Schwartz, 164 Mont. 402, 523 P.2d 1379, 31 St. Rep. 517; Bagley v. Florence Hotel Co., 165 Mont. 145, 526 P.2d 1372, 31 St.Rep. 766; Rasmussen v. Gibson Products Co., 165 Mont. 249, 527 P.2d 563, 565, 567, 31 St.Rep. 860.
In McAndrews, after being denied compensation by the Board, claimant appealed to the district court which, upon hearing testimony of the claimant and Dr. Sims, who had not testified at the Board hearing, reversed the Board. Factwise the medical testimony involved was not sufficient to move this Court to hold that it was substantial. The district court’s judgment was set aside and the order of the Division affirmed.
In Bagley, a latent injury case, the. Division found that the employer was estopped to deny a claim after over a year had run. The district court overruled the Division and this Court upheld its ruling, noting that the trial court had properly found the evidence before the Division did not support the finding of equitable estoppel.
In Rasmussen, this Court upheld the district court’s reversal of a denial of the claimant’s petition. Speaking for this Court Chief Justice James T. Harrison noted:
“# * * Respondent’s testimony was more orderly than that heard by the Division, ( but in substance contained nothing new except for the fact she had undergone surgery for a herniated disc after the Division proceedings closed.”
The Court further noted that such testimony as a whole was beyond the scope of “additional evidence” as the term is used by the statute but that the testimony of other witnesses, including her previous employers and the doctor who did the surgery, was admissible. The Court said:
“Obviously this testimony lends independent support to Dr. Humberger’s opinion that a causal relationship existed between respondent’s back trouble in 1972 and her injury at Gibsons in 1969. In short, the testimony took on additional relevance in light of what Dr. Humberger had to say at the district court *28 hearing. Bespondent could not reasonably have foreseen this at the time the Division conducted its proceedings; accordingly, appellants’ objection on this point is not well taken.
“We think the district court could find a preponderance of credible evidence to sustain respondent’s claim, both from the additional evidence presented at the district court hearing and the record of the Division.”
That same argument can be made in the instant case for the findings of the district court.
Likewise, we have recognized the doctrine that an employee suffering from a preexisting condition is not denied compensation if the disability was aggravated or accelerated by industrial injury. In Birnie v. United States Gypsum Co., 134 Mont. 39, 328 P.2d 133, we affirmed an award where trauma had accelerated a preexisting arthritic condition. In Young, we affirmed an award where shock, anxiety and excessive exertion under trying circumstances aggravated an arteriosclerotic condition. Furthermore, in Weakley v. Cook, 126 Mont. 332, 249 P.2d 926, we affirmed an award where a workman suffering from arteriosclerosis had sustained a fall and had died from coronary thrombosis. We believe the same principle applies to the instant case.
The judgment of the district court is affirmed.
MB. CHIEF JUSTICE JAMES T. HABBISON, and MB. JUSTICES DALY and HASWELL concur.