No. 96-102

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


CATHERINE E. SATTERLEE,

      Petitioner and Appellant,

v.

LUMBERMEN'S MUTUAL CASUALTY COMPANY,

      Respondent and Insurer

  for

BUTTREY FOOD AND DRUG,

      Employer.

FILED

DEC 10 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Bernard J. "Ben" Everett; Knight, Dahood,
            McLean & Everett; Anaconda, Montana

      For Respondent:

            Thomas A. Marra; Marra, Wenz, Johnson
            & Hopkins; Great Falls, Montana


Submitted on Briefs:  September 12, 1996

Decided:  December 10, 1996

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Catherine E. Satterlee filed a petition in the Workers' Compensation Court for the State of Montana in which she alleged that she was totally disabled as a result of injuries sustained during the course of her employment at Buttrey Food and Drug at its Anaconda store, but that Buttrey's insurer, Lumbermen's Mutual Casualty Company, had wrongfully terminated her disability benefits. Lumbermen's admitted that Satterlee had been injured while working for Buttrey, but claimed that she had recovered from that injury a short time thereafter, and that any present disability is a result of unrelated mental and physical conditions. After consideration of evidence presented at trial and by deposition, the Workers' Compensation Court found that her disability was not a result of her work-related injury, and denied disability benefits. Satterlee appeals from that finding. We reverse in part and affirm in part the judgment of the Workers' Compensation Court.

The claimant raises the following issues on appeal:

1. Are the Workers' Compensation Court's findings supported by substantial credible evidence?

2. Did the Workers' Compensation Court err when it denied Satterlee's requests for an award of attorney fees and the imposition of a twenty percent penalty in addition to her disability benefits?

2

## FACTUAL BACKGROUND

Catherine Satterlee was born on September 30, 1934. On the date that her claim came before the Workers' Compensation Court for trial, she was sixty years old. She did not graduate from high school, but did receive her graduate equivalency degree. She has no other formal education.

For fifteen years prior to the date of her work-related injury, Satterlee worked as a checker for Buttrey Food and Drug at its store in Anaconda. The evidence was, and the trial court found, that during that time Satterlee had developed degenerative arthritis in her cervical spine, but that she experienced no symptoms or disability from that condition. Until the date of her injury, she performed her duties, which included stocking shelves, dusting and cleaning floors, and checking out customers, without physical limitation. She missed no work due to her underlying cervical condition.

In May 1990, Satterlee's adult son was killed in an automobile accident. As a result of that loss, she suffered severe depression and missed several months of work. However, following treatment for her condition, which was later diagnosed as post-traumatic stress disorder, she returned to work in 1991 and worked without any further loss of time until the date of her injury which is the subject of this appeal.

On July 25, 1992, while waiting on a customer at Buttrey, Satterlee bent over and twisted her body in an attempt to rearrange a forty-five pound bag of dog food so that she could read the price

3

label. As a result of that effort, she experienced a pulling sensation in her left shoulder, followed by pain in that part of her body, as well as in her neck and down her left arm. She had experienced no similar pain at any time prior to that incident. She testified that since that incident she has had continuous pain in her left shoulder and neck. The Workers' Compensation Court found her to be a credible witness and did not question her testimony in that regard.

Following her injury, Satterlee attempted to return to work on two consecutive days, but could not perform her duties, and has not worked in any capacity since July 28, 1992.

Since her injury, Satterlee has been seen and treated or evaluated by numerous physicians. Her injury has been variously diagnosed as "left trapezius strain," "neck strain," and "degenerative disc disease and degenerative arthritis of the cervical spine."

Satterlee was treated with medication and therapy for her cervical and shoulder pain. However, that treatment has been unsuccessful.

Satterlee's pain is constant, it causes headaches, which are present most of the time, and her symptoms are worsened by activity.

Due to her pain and discomfort, she is no longer capable of performing most of her household responsibilities. The majority of her waking hours are spent sitting in a recliner.

4

During 1993, while visiting her daughter in the state of Washington, Satterlee was examined by a physician who advised Lumbermen's that whatever soft tissue injury she had sustained at work should have healed within a six week period, and that any continuing disability was a result of her preexisting spinal disease. Following receipt of that correspondence, on February 23, 1993, Lumbermen's terminated Satterlee's total disability benefits.

During 1993, Satterlee's adult daughter died at the age of 33 from cystic fibrosis after she was unable to obtain necessary organ transplants. During that same year, a foster daughter and her children died from a fire in their home, and Satterlee's sister was diagnosed with a terminal brain tumor. Satterlee's preexisting emotional condition worsened. After further psychiatric evaluation, she was against diagnosed with major depression and post-traumatic stress disorder.

Satterlee applied for social security disability benefits, and was found vocationally disabled by the Social Security Administration on December 14, 1993. The SSA attributed her disability to both back pain and severe emotional trauma.

It is, and has been, Lumbermen's position that any physical disability which resulted from Satterlee's work-related injury was temporary. Lumbermen's contends that she has fully recovered from any soft tissue injury and that, even though she experienced no symptoms from her underlying degenerative condition prior to that injury, any current pain or physical impairment that she currently

experiences is strictly a result of her preexisting degenerative condition. There was medical testimony to support that contention.

Lumbermen's also contends that, to the extent Satterlee is disabled from gainful employment, the primary factor is not her physical impairment, but her emotional disorder which developed subsequent to her work-related injury, and that therefore, it is not responsible for any disability caused by that disorder.

Satterlee has contended, and continues to assert on appeal, that she was free of pain prior to her injury, has been unable to function due to pain since her injury, and that the evidence does not support any finding other than that she is totally disabled due to her work-related injury.

The Workers' Compensation Court did not completely accept either party's argument. Its findings, some of which are designated as "findings," some of which are included under "conclusions," and some of which are set forth in its order that denied Satterlee's post-trial motions, are summarized as follows:

1. Satterlee was a credible witness. (Finding No. 7.)

2. Satterlee was able to perform all of her job duties during the fifteen years prior to her injury, and testified that she suffered no neck or left shoulder pain prior to that date. Medical exams conducted after her injury showed that she suffered from preexisting cervical disc disease. However, that condition was asymptomatic prior to her injury. (Finding No. 8.)

3. Although Satterlee's daughter died in the spring of 1993 (Finding No. 21), the internal medicine specialist from whom she

6

sought treatment for depression beginning on May 10, 1993, noted that that loss was only the latest in a series of personal losses, and that her son was killed in an automobile accident two years prior to her industrial injury. That loss also led to treatment for depression and insomnia. (Finding No. 22.)

4. On December 14, 1993, the Social Security Administration concluded that Satterlee was totally disabled because of back pain and severe emotional trauma. (Findings No. 29 and 30.)

5. When Satterlee testified that she had pain in her left shoulder, neck, and arm ever since 1992, the Court found her testimony credible. (Finding No. 33.)

6. Based on the medical testimony, the court was persuaded that Satterlee's 1992 industrial injury aggravated a preexisting cervical disease and made her condition symptomatic, triggering pain and associated muscle spasm. (Finding No. 44.)

7. Even though Satterlee suffers from shoulder and neck pain, her psychological condition amplifies her pain. (Finding No. 46.)

8. If motivated, Satterlee could tolerate her pain and work on a regular basis in either of two positions identified by the insurer's vocational consultant. (Finding No. 49.)

9. However, the court attributed Satterlee's lack of motivation to her depression and general mental condition, and found that, based on the combination of her circumstances, she would be unable to cope with her pain while working on a regular basis. (Finding No. 49.) The court was unpersuaded, however, that

7

absent her personal losses, Satterlee would be unable to cope with her pain and work. (Finding No. 50.)

10. The court agreed that at the time of trial Satterlee could not cope with her pain, and therefore return to work. However, the court was not persuaded that absent the psychological trauma associated with the death of her daughter and other close relatives, Satterlee's pain would preclude her from physically performing either of the two jobs which were medically approved by Dana Headapohl, M.D. The court did conclude that Satterlee had valid medical and psychological reasons for her inability to cope with pain, however, it further concluded that those reasons were attributable to subsequent unrelated events, and not to her industrial injury. (Conclusion of Law No. 12.)

11. When the Workers' Compensation Court denied Satterlee's post-trial motions, it clarified that it did not find Satterlee's pain to be anything other than as she claimed, but believed that she truthfully reported her disabling pain. However, it stated that her underlying psychological condition is amplifying her pain, and that the losses which have led to her underlying psychological condition have occurred since her injury. The court recognized that pain which is amplified by a preexisting psychological condition is compensable, but in this case, concluded that the principle events which caused Satterlee's post-traumatic stress disorder occurred subsequent to her work-related injury.

8

ISSUE 1

Are the Workers' Compensation Court's findings supported by substantial credible evidence?

We will uphold the Workers' Compensation Court's findings if they are supported by substantial credible evidence. *Wunderlich v. Lumbermen's Mutual Cas. Co.* (1995), 270 Mont. 404, 408, 892 P.2d 563, 566.

Following the entry of judgment for the defendant, Satterlee moved the Workers' Compensation Court to amend its findings based on her contention that they were not supported by substantial evidence. That motion was denied, and her appeal is from the denial of that motion. Lumbermen's has not cross-appealed, and therefore, we accept as true those findings which were favorable to Satterlee. Those findings were that, while Satterlee suffered from an underlying condition of degenerative disc disease prior to her work-related injury, she experienced no symptoms from that condition and was able to perform all of her job duties for fifteen years. Due to that injury, however, she aggravated the underlying degenerative disease in her neck, and has experienced continuous pain and muscle spasm since the date of her injury. The combination of her pain and her inability to deal with that pain due to her emotional condition, render her unable to work on a regular basis. However, absent her underlying emotional disorder, there are two jobs that Satterlee could perform.

The Workers' Compensation Court correctly concluded that an employer takes its employee as it finds her, and that if her

9

disability is aggravated by an underlying physical or emotional condition, that the employer is liable for disability which results from that aggravation. *Shumacher v. Empire Mfg.* (1977), 175 Mont. 411, 413-14, 574 P.2d 987, 988. However, the critical finding, and the one on which the denial of Satterlee's benefits is based, was the court's finding that her emotional condition resulted from events which occurred subsequent to her work-related injury, and that that condition did not preexist her injury. We must, therefore, determine whether that finding is supported by substantial evidence.

In the record, there are only three sources of information which relate to the onset of Satterlee's post-traumatic stress disorder. They include the claimant's own testimony at the time of trial, the medical records of Martin D. Cheatle, Ph.D., and the medical records of Kenneth C. Olson, M.D.

When asked during trial, Satterlee stated that she believed her post-traumatic stress symptoms developed in May 1990 when her son was killed. She stated that she was out of work and involved in treatment for that condition for eight months after her son's death, but had been able to return to work following that period of treatment until this injury occurred.

Dr. Cheatle was the psychologist who evaluated Satterlee for the St. Patrick Hospital Medical Panel to which she was referred for evaluation. His records indicate that, although her psychological condition declined after the death of her daughter, the diagnosis of post-traumatic stress disorder was first made

10

following the death of her son in 1990, and that her treatment by psychotherapy first began following that incident.

It was Dr. Cheatle's opinion that Satterlee's persistent cervical and left shoulder pain, and her ability to deal with that pain, were complicated by post-traumatic stress disorder and depression. However, he does not, at any point in his report, distinguish between the post-traumatic stress disorder that resulted from the death of her son and any worsening of that condition which occurred following the death of her daughter.

Dr. Kenneth C. Olson is a psychiatrist to whom Satterlee was referred for evaluation in August 1993 by Dr. Michael Sadaj, her attending physician. His report to Dr. Sadaj indicates that the onset of Satterlee's emotional problems began following the death of her son in 1990, and that the emotional trauma was so severe that she lost her memory for a period of eight months. His report indicates that during his interview of her she cried and expressed anger when discussing the loss of her son. Similar emotional reactions are not related to any other event. He diagnosed major depression with unresolved pathological grief and post-traumatic stress disorder. Nowhere in his report does he relate those emotional conditions to events that occurred after Satterlee's work-related injury. Any inference that can be drawn from his report suggests that the primary factor related to those mental disorders is the death of her son, which occurred prior to her work-related injury.

There is no other evidence which suggests a cause for Satterlee's emotional disorder, other than the evidence set forth above. Therefore, we conclude that there was not substantial evidence to support the Workers' Compensation Court's finding that Satterlee's depression or post-traumatic stress disorder was caused by events which occurred subsequent to her work-related injury.

We have previously held that:

> [I]t is well established that an employer takes his employee subject to the employee's physical and, logically, emotional condition at the time of his employment. *Birnie v. U.S. Gypsum Co.*, 134 Mont. 39, 328 P.2d 133 (1958); *Peitz v. Industrial Accident Board*, 127 Mont. 316, 264 P.2d 709 (1953). An employee who suffers from a pre-existing condition is entitled to compensation if the condition was aggravated by an industrial injury. *Rumsey v. Cardinal Petroleum*, 166 Mont. 17, 530 P.2d 433 (1975); *Weakley v. Cook*, 126 Mont. 332, 249 P.2d 926 (1952).

*Shumacher*, 175 Mont. at 413-14, 574 P.2d at 988.

The Workers' Compensation Court correctly recognized this rule of law when, during trial, it stated:

> Sounds like we've got the principle that you take the worker as you find them, so if they are suffering from an underlying psychological condition and they've got pain that's triggered, even though that pain continues to be -- they continue to feel more severe pain than they would without the psychological condition, this sounds like a multi-factorial thing. You've got some of the psychological condition arising before, some after, with the psychological condition probably amplifying the pain.

It logically follows that if Satterlee's work-related injury in 1992 aggravated an underlying condition of degenerative arthritis or disc disease, and she experiences pain from that aggravation, which is made worse by physical activity, and which she cannot cope with due to a preexisting emotional condition, such

12

as depression or post-traumatic stress disorder, her employer is liable for the disability which results from that combination of physical and emotional conditions. In this case, the Workers' Compensation Court found and concluded that Satterlee was not a candidate for regular employment due to the combination of her physical and emotional impairment.

Therefore, we reverse the judgment of the Workers' Compensation Court to the extent that it denied Satterlee's claim for total disability benefits, and remand this case to that court for entry of judgment in favor of the claimant, Catherine Satterlee.

### ISSUE 2

Did the Workers' Compensation Court err when it denied Satterlee's requests for an award of attorney fees and the imposition of a twenty percent penalty in addition to her disability benefits?

Satterlee also contends that Lumbermen's termination of her total disability benefits was unreasonable and, therefore, that she is entitled to an award of attorney fees pursuant to § 39-71-611, MCA (1991), and the imposition of a twenty percent penalty pursuant to § 39-71-2907(1), MCA (1991). Based on its conclusion that Lumbermen's was correct when it terminated her disability benefits, the Workers' Compensation Court held that the insurer had not acted unreasonably.

Although we reverse that part of the Workers' Compensation Court's judgment which denied disability benefits to Satterlee, we

13

conclude that there was substantial evidence upon which the court could have found that the insurer did not act unreasonably when it terminated her benefits. Specifically, correspondence from Alvin J. Harris, M.D., dated February 1, 1993, created an issue with regard to the cause of her continuing physical complaints. We conclude that it was not unreasonable as a matter of law for the insurer to rely on that information as the basis for its termination of benefits. Therefore, the Workers' Compensation Court's denial of attorney fees and a twenty percent penalty is affirmed.

This case is remanded to the Workers' Compensation Court for entry of judgment consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

December 10, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Bernard J. "Ben" Everett, Esq.
Knight, Dahood, McLean & Everett
P.O. Box 727
Anaconda, MT 59711-0727

Thomas A. Marra, Esq.
Marra, Wenz, Johnson & Hopkins
P.O. Box 1525
Great Falls, MT 59403-1525

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy