No. 12603

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

PATRICIA I. McANDREWS,

Claimant and Respondent,

-vs-

JOSEPH, EDGER, SYBILA & CAROL SCHWARTZ,

Employer and Appellants,

-vs-

GLACIER GENERAL ASSURANCE COMPANY,

Defendant and Appellant.

---

Appeal from: District Court of the Third Judicial District,
Honorable Robert Boyd, Judge presiding.

Counsel of Record:

For Appellants:

Norman C. Robb argued, Missoula, Montana

For Respondent:

Scanlon, Brolin and Connors, Anaconda, Montana
Jack M. Scanlon argued, Anaconda, Montana

---

Submitted: April 25, 1974

Decided: JUL 10 1974

Filed: JUL 10 1974

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is a workmen's compensation action arising out of an accident suffered by claimant Patricia I. McAndrews on June 25, 1970 while employed as a sales clerk or checker by Schwartz Department Store in Anaconda, Montana.

At closing time on June 25, 1970 she was looking for a pair of slippers for a customer. She had to go up a ladder to find the slippers, and was a step or two up the ladder when she slipped and fell, or the ladder slipped from under her. She struck her right ribs on the ladder when she fell and her left shoulder hit the floor.

On the date of the injury claimant was paid $2.02 per hour and she worked 8 hours per day, 5 days a week. She was married but had no dependent children.

As the accident occurred at closing time claimant went home and wrapped a towel around her ribs. She worked all the following day June 26th, but that night her ribs hurt so she called Dr. Donald Good. The doctor saw her at the hospital emergency room on the evening of June 26. Her ribs were X-rayed and she was given a rib corset to wear. At that time her only complaint of injury was her ribs.

Claimant McAndrews filed a claim for compensation with the Workmen's Compensation Division, hereinafter called the Division. Glacier General Assurance Company was the workmen's compensation carrier for Schwartz. Glacier accepted the claim and paid McAndrews temporary total compensation benefits at her lawful rates in the amount of $2,609 for the period from June 26, 1970 through October 7, 1971, a period of 67 weeks. Glacier also paid doctor, hospital and medical expenses for claimant in the sum of $4,934.90.

In the spring of 1971 McAndrews suffered another accident, which was a nonindustrial accident, when she fell in the parking lot at her apartment.

On October 27, 1971, claimant was found to have a condition known as arteriosclerosis obliterans of her right common femoral artery. On December 1, 1971, Dr. J.R. Sims performed a surgical procedure known as an endarterctom and sympathectomy to relieve the arteriosclerosis obliterans in the femoral artery. The operation was performed at St. Peter's Hospital in Helena. The medical expense for Dr. Sims' care and the operation amounted to $4,448.55.

On April 5, 1972, a hearing was held before a Division hearing officer to determine (1) the nature and extent of the injuries sustained by claimant in the June 25, 1970 industrial accident, (2) the date the healing period ended for the injuries she sustained in that accident, (3) the nature and extent of the impairment or disability, if any, suffered by her in that accident, (4) whether claimant was entitled to any further compensation and, if so, the amount and extent thereof, and (5) whether there were any unpaid medical expenses connected with the injuries she sustained on June 25, 1970. McAndrews and Dr. Donald Good, her attending physician for the injures she received in the June 25 accident, testified at the hearing.

The Division's hearing officer made and entered his findings of fact and conclusions of law on September 18, 1972. The Division then entered an order dated September 26, 1972 awarding compensation, and adopting the hearing officer's findings and conclusions which in effect found that: (1) the injuries sustained by McAndrews in the June 25, 1970 accident were a fracture to her right ninth rib and some possible low back injury; (2) the healing period for her industrial accident injuries ended in October 1971; as a result of her low back injury McAndrews had an impairment of 5% to 10% of the body as a whole; (4) in addition to the compensation previously paid to her for and during the period from June 26, 1970 through October 7, 1971, McAndrews was entitled to a further award of 75 weeks of compensation at the rate of $37 per week to be paid as follows: that 50 weeks for the period of October 8, 1971 through September 21,

- 3 -

1972 be paid in a lump sum of $1,850 and McAndrews be retained on compensation for the remaining 25 weeks based on a showing of loss of earning capacity; (5) the condition of arteriosclerosis obliterans was not proximately caused by the June 25, 1970 accident and her right leg problem resulting therefrom was not a proximate result of the accident; and (6) Glacier was not responsible for the doctor, hospital and medical expenses incurred by McAndrews for treatment of the arteriosclerosis obliterans.

McAndrews requested a rehearing before the Division and was denied. She then appealed to the district court where a hearing or trial was held on March 16, 1973. McAndrews and Dr. J.R. Sims testified. On June 19, 1973, the district court entered findings of fact and conclusions of law which reversed the findings, conclusions and order of the Division. It concluded: (1) that the condition of arteriosclerosis obliterans and claimant's right leg problems resulting therefrom were proximately caused by the June 25, 1970 accident; (2) that her healing period ended on March 21, 1972, rather than in October 1971; (3) awarded her compensation in the amount of $888 for the period of October 7, 1971 through March 21, 1972; (4) that claimant had a 20% impairment rather than a 5% to 10% impairment as found by the Division; (5) awarded McAndrews a further award of 100 weeks of compensation at $37 per week, payable in a lump sum of $3,700; and (6) ordered Glacier to pay the medical bills and expenses incurred by McAndrews because of the arteriosclerosis obliterans. Judgment was entered accordingly on June 21, 1973.

Glacier and Schwartz filed motions requesting the court to amend its findings of fact and conclusions or in the alternative to grant them a new trial. The court denied both motions by order dated July 11, 1973. Schwartz and Glacier appeal from the judgment and order denying their motions.

Glacier has paid McAndrews the $1,850 lump sum compensation award ordered by the Division in its September 26, 1972 order awarding compensation.

- 4 -

Other more detailed facts pertinent to the case also appear:

Dr. Good continued to care for and treat McAndrews. In addition to the June 26, 1970 examination at the hospital emergency room, he saw, examined and treated her on June 29, July 3, 7, 27, 29, 30 and 31 of 1970. At all of these visits and examinations McAndrews' only complaints and symptoms were that she had pain in the right rib cage and the doctor treated her for that. Dr. Good testified he took a medical history from McAndrews on June 29, 1970 and he took notes and kept records of her complaints and symptoms on each time he subsequently saw her. He testified that during the period from June 26, 1970 through August 27, 1970 McAndrews did not complain to him of any injury to, pain in, or difficulty with her right leg or low back. He testified her symptoms and complaints of pain were those which people with a fractured rib usually have.

He further testified that at an office visit on August 28, 1970, McAndrews for the first time complained of pain and weakness in her right leg and low back. On that date he examined her right leg and back and found her complaints symtomatic of a sacroiliac strain or a possible herniated disc. On August 28, 1970, Dr. Good also checked for and found a normal pulse in her right leg. He thought at that time that a myelogram should perhaps be performed to check out the possibility of a herniated disc, but he first wanted to treat her back and right leg complaints conservatively with traction, drugs, physical therapy, etc. He put her in the Community Hospital in Anaconda for the period of September 3 to September 24, 1970 for a course of traction on her right leg. The traction was beneficial but due to an allergy McAndrews had difficulty with the traction.

Dr. Good continued to see her and on September 29, 1970 she was still complaining of pain in her right leg and back so he put her in a lumbo-sacral belt. On October 15, 1970 Dr. Good put McAndrews back in the hospital for pneumonia and pleurisy which were not related to or caused by the June 25, 1970 accident. She remained in the hospital until October 22, 1970 and while there she had periodic complaints of low back and leg pain so Dr. Good treated these complaints by giving her benemide and physiotherapy.

McAndrews continued to complain of low back and right leg pain so on November 18, 1970 Dr. Good again put her in the hospital for 10 days for a course of pelvic traction to treat the sacroiliac strain.

On January 29, 1971 Dr. Good again examined McAndrews' leg and back and at that time decided she should have a myelogram to check out the possibility of a herniated disc. Dr. Good sent her to Dr. John Davidson, an orthopedic specialist in Butte, for the myelogram. Dr. Davidson put claimant in a Butte hospital for 8 days from February 2 to February 10, 1971, during which time a myelogram was performed and she had a course of physical therapy. The myelogram was negative in that it showed she had an entirely normal spinal canal. She improved a great deal with the physical therapy.

Although the myelogram was negative, Dr. Good made arrangements for McAndrews to be examined by Dr. Alexander Johnson, a neurosurgeon in Great Falls, to double check on the possibility of a herniated disc and to determine whether his diagnosis of a sacroiliac strain as the cause of her low back and right leg complaints was correct. Dr. Johnson examined McAndrews on April 15, 1971 and concluded that she had: (1) a sacroiliac joint disease, possibly of a rheumatoid nature, and (2) atypical radicular symptoms, which he felt might possibly be from a herniated disc in the lumbar spine. Dr. Johnson wanted to know what the cerebrospinal fluid protein from the myelogram performed by Dr. Davidson disclosed before he made a decision as to any surgical exploration. Dr. Good then sent McAndrews to Butte where a Dr. Patterson had a spinal tap performed to get the cerebrospinal fluid protein requested by Dr. Johnson. Dr. Johnson received the results of the spinal tap and again examined McAndrews in September 1971. Based on the results of the spinal tap and his second examination Dr. Johnson ruled out a herniated disc and diagnosed the cause of her low back and right leg problems as a sacroiliac joint disease, maximal right, and recommended treatment for it by the use of steroids, muscle relaxants and heat.

Dr. Good testified his diagnosis of the injuries sustained

by McAndrews as a result of the June 25, 1970 accident were (1) a fracture of the ninth right rib on the right side and (2) a sacroiliac strain. This was confirmed by Dr. Johnson and Dr. Davidson.

Dr. Good testified the healing period for the fractured rib ended six weeks after the accident and that maximum healing of the sacroiliac strain was reached in October 1971. He also testified that in his opinion McAndrews had had no impairment from the fractured rib and that she may have 5% to 10% impairment from the sacroiliac strain.

Glacier paid McAndrews temporary total compensation benefits during the entire period from June 26, 1970 through October 7, 1971 while she was undergoing the extensive care and treatment outlined above for fractured rib and the low back and right leg pain from the sacroiliac strain. This was a period of 67 weeks. The first 26 weeks were paid at $42 per week and the remainder of 41 weeks were paid at $37 per week as provided by section 92-701, R.C.M. 1947, as that statute read on the date of the accident. Glacier terminated compensation payments as of October 7, 1971, because the healing period had ended and she had been evaluated and rated for impairment. The Division and Mrs. McAndrews were so advised by Glacier. Glacier also paid the doctor, hospital and medical expenses during this period of time which amounted to $4,934.

With respect to the nonindustrial accident sustained by McAndrews in the spring of 1971, there was conflicting testimony. At the hearing before the Division, McAndrews twice stated that she never had any injuries nor had she been involved in any accidents either prior or subsequent to the June 25, 1970 accident. Later she admitted she had suffered an industrial accident in 1966 when she fell at Schwartz Department Store and injured her right hip. Finally, she admitted she had fallen in the parking lot in 1971, but gave several different versions of this subsequent accident. McAndrews told Dr. Good about this second accident but she did not tell Dr. Sims about it.

On October 27, 1971, Dr. Sims examined McAndrews and found her to be suffering from arteriosclerosis obliterans of the right common or femoral artery. On December 1, 1971, he performed surgery to relieve that condition. Arteriosclerosis is hardening of the arteries. It is an aging process and all people have it to some degree. It progresses as people grow older. It is an extremely common disease and some people have it to a greater degree than others. Obliterans is a blockage or clot in a blood vessel.

Dr. Sims said that during the surgery he found and removed a fresh blood clot and found evidence of an old clot. He testified that the fresh clot was only of several days duration and much too recent to be in any way related to the accident of June 25, 1970. As to the old clot, he said there perhaps was a relationship between it and the June 25, 1970 accident.

Dr. Sims further testified he took a medical history from McAndrews when he first saw her on October 27, 1971, and the only accident or trauma she told him about was the June 25, 1970 accident. She did not tell him about her second accident in May or June 1971 when she fell down in the parking lot. Dr. Sims therefore was unaware of the second accident when he said that the arteriosclerosis obliterans might be attributable to the first. Dr. Sims also testified he did not know other doctors had examined McAndrews for arteriosclerosis obliterans and had found no evidence of an obstruction or clot before he saw her on October 27, 1971, because she had not told him about that. In short, Dr. Sims had no way of knowing whether the June 25, 1970 accident or the parking lot accident of 1971 caused the clot, or whether in fact either accident caused anything.

In regard to the arteriosclerosis obliterans, Dr. Good testified that he never found any symptoms or complaints that indicated McAndrews had that condition; that such a condition is not caused by trauma; and that the June 25, 1970 fall from the ladder neither caused nor aggravated any condition of arteriosclerosis obliterans.

The main issue presented for review is whether the accident McAndrews suffered on June 25, 1970 while employed by Schwartz Department Store, was an industrial accident which proximately caused an injury as defined by section 92-418, R.C.M. 1947, to McAndrews' right leg. The Division found, concluded and ordered that the arteriosclerosis obliterans and McAndrews' right leg problems were not proximately caused by the June 25, 1970 accident. On appeal the district court reversed the Division and held that the arteriosclerosis obliterans was a result of the accident, increased the percentage of permanent impairment, awarded her compensation therefor and ordered Glacier to pay medical expenses she incurred for that condition. Glacier and Schwartz contend the evidence is not sufficient to support the findings, conclusions and judgment of the district court.

This Court has the entire record before it and finds that the only injuries suffered by McAndrews in the accident of June 25, 1970, were a fractured rib and a sacroiliac strain.

The Division so found and awarded compensation and medical benefits for those injuries. It also found and ordered that the arteriosclerosis obliterans with its problem in her right leg was not a proximate result of the accident. Appellants Schwartz and Glacier accepted the Division's decision and award. The evidence introduced before the district court consisted of an instant replay of McAndrews' testimony before the Division, which added nothing new to the case, and Dr. Sims' oral testimony. The evidence before the district court did not preponderate against the Division's findings, conclusions, and decision nor was it sufficient to justify the court's action in finding the arteriosclerosis obliterans was proximately caused by the June 25, 1970 accident. For this reason we have outlined the evidence in such great detail.

On June 25, 1970, section 92-418, R.C.M. 1947, defined an industrial injury as:

"'Injury' or 'injured' means a tangible happening of a traumatic nature from an unexpected cause, or unusual strain, resulting in either external or internal physical harm, and such physical condition as a result therefrom <u>and excluding disease not traceable to injury</u>." (Emphasis supplied).

Both Dr. Good and Dr. Sims said arteriosclerosis is hardening of the arteries; that it is an aging process; that it is an extremely common disease and most people have it to some degree; and, that it progresses as a person grows older. Both doctors said they were not surprised to find it in McAndrews, who was 63 at the time of the June 25, 1970 accident and that her arteriosclerosis predated that accident. Regarding the obliterans, Dr. Sims testified the old blood clot also predated that accident and the new clot was much too recent to be connected with it.

To make the arteriosclerosis obliterans a compensable injury, claimant has the burden of proving by a preponderance of the evidence that the condition was proximately caused by a tangible happening of a traumatic nature from an unexpected cause resulting in internal physical harm and that such **physical** condition was a result therefrom. McAndrews simply failed to prove such an injury.

This Court has previously held that where a claimant's disability is the result of a "disease not traceable to injury" it is not a compensable "injury" within the meaning of section 92-418, R.C.M. 1947. LaForest v. Safeway Stores, Inc., 147 Mont. 431, 437, 414 P.2d 200. Clearly McAndrews' arteriosclerosis obliterans is a result of a disease not traceable to the June 25, 1970 accident and therefore is not a compensable injury. The distirct court erred in finding and concluding that the arteriosclerosis obliterans related to the June 25, 1970 accident and in awarding her compensation and medical benefits for it.

Since we have so found, it is unnecessary to consider the issue of probable cause.

This case came to the district court with every presumption that the Division had decided it correctly. The district court was not justified in reversing the findings of the Division unless the evidence clearly preponderated against such findings. Stordahl v. Rush Implement Co., 148 Mont. 13, 417 P.2d 95.

If there is sufficient evidence to sustain the Division's findings, the district court on appeal must affirm those findings. Miller v. Townsend Lumber Co., 152 Mont. 210, 448 P.2d 148; Jones v. Bair's Cafes, 152 Mont. 13, 445 P.2d 923.

When the district court permits additional evidence to be introduced on appeal from the Division's decision and the additional evidence is not important or adds nothing new to the case, then the court is bound by the same rule of appeal which applies where the appeal is heard only on the Division's record. Kelly v. West Coast Const. Co., 106 Mont. 463, 78 P.2d 1078. The additional evidence permitted by the district court was neither important nor added anything new to the case. Appellants were entitled to the presumption the Division decided the case correctly. The district court erred in failing to affirm the Division's findings and decision.

We are aware of the rule that if the district court permits additional evidence to be introduced which was not presented to the Division, the case goes to this Court with the presumption the district court decided it correctly. Murphy v. Industrial Accident Board, 93 Mont. 1, 16 P.2d 705. This presumption is not applicable in the instant case because of the insufficiency of the additional evidence. It is the duty of this Court to determine whether the district court's decision is supported by substantial credible evidence. If, after examining all of the evidence before the Division and the additional evidence introduced before the district court, it does not appear the evidence clearly preponderates against the findings of the Division, the judgment of the district court in reversing the order of the Division must in turn be reversed by this Court. Stordahl v. Rush Implement Co., supra.

The district court erroneously ordered Glacier to pay the medical expenses McAndrews incurred in the sum of $4,949.72 for treatment of the arteriosclerosis obliterans. Glacier is not obligated to pay these medical bills for two reasons: (1) the condition was not the result of an industrial accident, and (2) the accident occurred in 1970 and medical expenses under section 92-706,

R.C.M. 1947, at that time, were limited to $5,000 and Glacier had already paid $4,934.90 in medical bills for the fractured rib and sacroiliac strain as shown by the Division's files. The Division had not ordered payment of bills in excess of $5,000 and the district court had no authority to do so in any event.

The findings, conclusions and judgment of the district court are set aside and reversed. The Division's order of September 26, 1972 is affirmed. Costs to appellants before this Court and the district court.

*Wesley Castles*
-----------------------------------------
Justice

We Concur:

-----------------------------------------
    Chief Justice

-----------------------------------------

-----------------------------------------

-----------------------------------------
    Justices.

Mr. Justice Haswell and Mr. Justice Daly specially concurring:

We concur in the result reached by the majority for a different reason. In our view the arteriosclerosis obliterans was not proven by a preponderance of the evidence to have been proximately caused by claimant's June 25, 1970 industrial accident.

*Gene B Daly*