No. 85-82

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

RENAE J. TOCCO, surviving spouse;
and CORI TOCCO and NICHOLAS ANTHONY
TOCCO, minors, by and through their
guardian, JUDY L. TOCCO,

        Claimants and Respondents,

   -vs-

CITY OF GREAT FALLS, Employer,

     and

STATE COMPENSATION INSURANCE FUND,

        Defendant and Appellant.

APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Marra, Wenz, Johnson & Hopkins; Thomas A. Marra argued,
        Great Falls, Montana

    For Respondent:

        Baiz & Olson; Thomas A. Baiz argued, (Spouse) Great
        Falls, Montana (Spouse)
        Regnier, Lewis, Boland & Roberts; Stephen D. Roberts
        argued, (Children), Great Falls, Montana

             Submitted: January 17, 1986

              Decided: February 20, 1986

Filed: FEB 20 1986

*Ethel M. Harrison (signature)*

—————————————————————
               Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the Workers' Compensation Court of the State of Montana. Respondents sought benefits as a result of a March 9, 1984, industrial accident in Cascade County which resulted in the death of Anthony Tocco. The court awarded benefits to the respondents and this appeal followed. We affirm.

Claimant-respondent Renae Tocco is the surviving widow of the decedent, Anthony Tocco (hereinafter Tocco). Claimant-respondent Judy Tocco is the guardian of Cori and Nicholas Tocco, the biological minor children of the decedent. Renae Tocco, Cori Tocco and Nicholas Tocco are all beneficiaries of the decedent pursuant to § 39-71-116(2), MCA.

The decedent, age 36 at the time of his death, was hired as a temporary employee by the City of Great Falls in November of 1983. The record indicates that Tocco had hypertension (high blood pressure) and coronary arteriosclerosis (narrowing of the arteries leading to the heart) which preexisted his employment with the City of Great Falls.

Prior to the date of his death, Tocco worked almost exclusively as a "helper" on a city sanitation route. As a sanitation "helper" Tocco's job was helping the "lead man" collect refuse. The employee in the "lead man" position had more responsibility than the helper. The "lead man" was responsible for his crew, that the route was followed and that no stops on the route were missed. The record indicates that Tocco was considered by his fellow employees to be a good worker.

2

When Tocco was hired in November 1983, it was made known to him that his job was temporary. On March 7, 1984, two days before his death, Tocco was notified that he would be laid-off effective March 21, 1984. On March 8, 1984, Tocco was told that he was to be the "lead man" on the Riverview route on March 9, 1984 (the day of his death). The Riverview route was considered by the Great Falls Sanitation Department to be the most difficult and confusing route in the entire city.

The record shows Tocco felt it was very important that he perform well on his job and impress his employers. He knew that permanent, full-time positions were going to open up and felt that hard work would increase his chances of getting a full-time position. Tocco felt that his job performance on March 9, 1984, as a lead man, was a test which could determine whether or not he would be rehired by the City of Great Falls.

On March 9, 1984, when Tocco and his helper, Ken Lind, broke for lunch they were fifty-six stops ahead of schedule on the Riverview route. The record shows that during his lunch hour, Tocco checked in with the sanitation foreman to see if there had been any calls about missed stops on his route. The foreman indicated to Tocco that no calls had been received.

After lunch, at approximately 2:30 p.m., Tocco and Ken Lind made a stop at a residence to collect refuse. This was the only stop that day at which Ken Lind had to ask Tocco for help due to the size and weight of the object. The record shows the object was a box approximately two and one-half feet wide and six to seven feet long. Tocco grabbed the box and dragged it four or five feet from the garbage can rack to

the truck. At this point both Tocco and Ken Lind grabbed the box to lift it. The box bent in the middle as they lifted it, and Tocco had all the weight of the box as they put it in the truck. Approximately two to three minutes after Tocco lifted the box, Ken Lind found him lying on the ground beside the truck. Tocco was given CPR but could not be revived, and was dead on arrival at the hospital.

The uncontroverted medical evidence presented by all three doctors in this case, Drs. Buffington, Henneford and Willson, revealed that Tocco had hypertension and coronary arteriosclerosis which preexisted his employment with the City of Great Falls. Dr. Henneford's autopsy report revealed that at the time of his death, Tocco had the following:

> I. Severe stenosing arteriosclerosis of coronary arteries [narrowing of the arteries leading to the heart] with:
>
> A. 75-80% stenosis of left main coronary artery and anterior descending branch.
>
> > 1. Organizing thrombosis [blood clot] and partial occlusion of anterior descending branch.
>
> B. 50-75% stenosis of circumflex branch of left coronary artery and of right coronary artery.

Dr. Henneford, in his autopsy report, listed Tocco's cause of death as "coronary artery insufficiency."

The three doctors, named above, also testified that if Tocco had not died at work on March 9, 1984, he might have lived weeks, months, possibly even years longer. Furthermore, Tocco's treating physician, Dr. Buffington, testified that Tocco's job related emotional and physical stress may have played a very direct role in his sudden death by aggravating his preexisting conditions of arteriosclerosis and hypertension. Dr. Willson, appellant's expert witness,

4

and Dr. Henneford, the pathologist, also both testified that it was at least medically possible that the job related emotional and physical stress experienced by Tocco shortly before his death aggravated his preexisting arteriosclerosis and hypertension and led to his sudden death.

The respondents subsequently filed a Petition for Hearing with the Workers' Compensation Court alleging Tocco had suffered an industrial injury resulting in his death which arose out of and in the course of his employment with the Great Falls Sanitation Department. The Workers' Compensation Court ruled in favor of the respondents and found Tocco's death was caused by his employment with the City of Great Falls. The State Compensation Insurance Fund appeals.

The appellant, State Workers' Compensation Fund, presents the following issues for review by this Court:

(1) Whether the Workers' Compensation Court was in error by ruling that a death caused by arteriosclerosis is a compensable Workers' Compensation injury.

(2) Whether the Workers' Compensation Court was in error when it denied appellant's motion to retake the deposition of its medical expert, Dr. Willson, after new and relevant medical evidence was discovered.

(3) Whether the Workers' Compensation Court erred when it allowed respondents and other witnesses to testify about statements made by the decedent.

Under the first issue, appellant contends the Workers' Compensation Court was in error when it held that Tocco's death was caused by his work for the City of Great Falls. Basically, appellant is arguing that the instant case is not a heart attack case, but a case dealing with the disease of

5

arteriosclerosis. The appellant contends the real issue is whether the decedent suffered a compensable Workers' Compensation injury as a result of his death from the natural progression of the disease of arteriosclerosis. The appellant strongly points out that this Court has never allowed compensation under the Workers' Compensation Act where the medical evidence shows that a claimant has died from the natural progression of the disease of arteriosclerosis. Schieno v. City of Billings (Mont. 1984), 683 P.2d 953, 41 St.Rep. 1157; Dumont v. Wickens Brothers Construction Company (1979), 183 Mont. 190, 598 P.2d 1099; McAndrews v. Schwartz (1974), 164 Mont. 402, 523 P.2d 1379.

The respondents, on the other hand, argue appellant totally misstates the issue as "whether Tocco suffered a compensable Workers' Compensation injury as a result of his death from the natural progression of the disease of arteriosclerosis." Respondents point out they have never sought and do not now seek compensation for Tocco's arteriosclerosis which undisputably preexisted his employment with the City of Great Falls. Rather, respondents argue they are entitled to Workers' Compensation benefits because the evidence clearly shows Tocco died of heart failure, on the job, and that his job related physical and emotional stress aggravated his preexisting arteriosclerosis and hypertension and caused his sudden death. Therefore, although appellant correctly points out that this Court has never compensated a claimant who has died as a result of the natural progression of the disease of arteriosclerosis (see Schieno, Dumont and McAndrews, supra), these cases are technically not applicable to the instant case because respondents do not seek benefits for Tocco's arteriosclerosis. We agree.

6

It should first be noted that the standard of review on appeal of a Workers' Compensation Court judgment is both clear and well settled in Montana.

> The function of this Court is to determine whether there is substantial evidence to support the findings and conclusions of the Workers' Compensation Court . . . This Court will not substitute its judgment for that of the trial court as to the weight of the evidence on questions of fact . . . Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court will not overturn the decision . . .

Bond v. St.Regis Paper Co. (1977), 174 Mont. 417, 419, 571 P.2d 372, 373.

In light of this standard, we believe there is substantial credible evidence on the record to support the judgment of the lower court in the instant case. Therefore, this Court cannot overturn that decision.

First, we find the decision of the lower court was correct in its conclusion that respondent's proved a compensable injury and that such an injury was the cause of Tocco's death. For an injury to be compensable under the Workers' Compensation Act, it must first meet certain definitional requirements. Section 39-71-119, MCA, defines "injury" as follows:

> (1) a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result herefrom and excluding disease not traceable to injury, except as provided in subsection (2) of this section:
>
> (2) cardiovascular or pulmonary or respiratory disease contracted by a paid firefighter employed by a municipality, village, or fire district as a regular member of a lawfully established fire department, which diseases are caused by overexertion in times of stress or danger

7

in the course of his employment by proximate exposure or by cumulative exposure over a period of 4 years or more to heat, smoke, chemical fumes, or other toxic gases. Nothing herein shall be construed to exclude any other working person who suffers a cardiovascular, pulmonary, or respiratory disease while in the course and scope of his employment.

(3) death resulting from injury.

Appellant contends that subsection (2) of § 39-71-119 is the only clause applicable to the instant case because it deals with "cardiovascular . . . disease [caused] while in the course and scope of . . . employment." Further, under subsection (2), appellant argues that respondents have not carried their burden of proof that it was "medically probable" that Tocco's cardiovascular disease was caused by his employment with the City of Great Falls. In fact, the appellant points out, the medical evidence is uncontroverted that Tocco's hypertension and arteriosclerosis preexisted his employment with the City of Great Falls.

Respondents, on the other hand, point out "it is well established in Montana that an employer takes his employee subject to the employee's physical condition at the time of employment . . . " Bond, 571 P.2d at 374. Furthermore, when claimants have preexisting conditions, that combined with their industrial accidents produce their disability, acceptable proof of disability is proof that it was medically possible for an industrial accident to aggravate a preexisting condition. Viets v. Sweet Grass County (1978), 178 Mont. 337, 583 P.2d 1070. Also, this Court in Bykonen v. Montana Power Company (Mont. 1985), 703 P.2d 856, 858, 42 St.Rep. 1112, 1115, recently reaffirmed its consistent holdings that "when it is proved medically possible that an industrial accident or injury aggravated a pre-existing condition, that proof may, together with other evidence, established a compensable disability."

The respondents argue, and this Court agrees, the case at bar is clearly an aggravation of a preexisting condition

8

case. Therefore respondents discharge their burden of proof by showing a "tangible happening of a traumatic nature from an unexpected cause or unusual strain" (§ 39-71-119(1)) possibly aggravating Tocco's preexisting arteriosclerosis and high blood pressure and resulting in his death. In this case, the Workers' Compensation Court found, and it is undisputed in the evidence, that at the time of Tocco's sudden death, he was suffering from the effects of significant physical and emotional stress which satisfied the requirements of § 39-71-119(1), and that such stress aggravated his preexisting arteriosclerosis and caused his sudden death. The court found in finding of fact no. 28., "The job-related physical and emotional stress claimant suffered shortly before his death aggravated his preexisting conditions of hypertension, arteriosclerosis and narrowed coronary arteries, and led to his death." This finding was based on the testimony of Dr. Buffington, decedent's physician, and supports the court's finding.

On the date of his death, Tocco was suffering from considerable mental and emotional stress because: (1) he had been notified only two days earlier of his lay-off; (2) he had been given more responsibility on the day of his death then he had at any other time during his four months of employment which caused him to be very nervous; (3) he was very concerned about missing some stops on a route which was very difficult and confusing; and (4) he considered his lead man responsibilities as a test to determine whether or not he was qualified for a full-time position with the City at a later date.

Completing the chain of incidents are the job related physical stresses Tocco underwent on the day of his death.

Of particular importance are the facts that (1) Tocco and his helper were 56 stops ahead of schedule on this particular route, and (2) Tocco dragged and lifted the heaviest object he and his helper had to handle that day only two to three minutes prior to his death.

Finally, the physician's testimony provided the final link between Tocco's preexisting conditions, his physical and emotional injuries, and his sudden death. For example, Dr. Buffington, Tocco's treating physician, testified that Tocco's job related emotional and physical stress may have played a very direct role in his sudden death by aggravating his preexisting conditions of arteriosclerosis and hypertension.

> Q. [By respondents' attorney] Do you have an opinion as to whether the physical and emotional stress more likely than not aggravated the preexisting conditions and led to the death?
>
> A. [By Dr. Buffington] I think as a factor in precipitating the acute arrhythmia, given the information in the autopsy, that it may have played a very direct role in precipitating that acute death.
>
> Q. What is the basis for that opinion, Doctor?
>
> A. Well, basically the sudden death syndrome is associated with cardiac arrhythmias. Usually ventricular fibrillation. We know that generally there is in a sudden death syndrome, there is generally some underlying cardiovascular disease, usually coronary disease. But there is frequently a precipitating factor which will cause the myocardium to become irritable. And that in Mr. Tocco's case was more than likely related to the circulating adrenalin levels within his bloodstream at that point in time. Probably in extremely high levels related to his extreme physical activity.
>
> Q. How would that release of adrenalin make the heart more susceptible to arrhythmia, heart attack, and sudden death in Tony Tocco's case?

10

A. Basically by producing more ventricular contractions at a site of ventricular irritability.

Q. And, Doctor, would the emotional distress in and of itself release adrenalin into the system?

A. Excuse me?

Q. Would the emotional stress in and of itself release adrenalin into the system?

A. No question. That has been proven many times.

Q. And, Doctor, would the physical stress on top of the emotional stress release even a greater amount of adrenalin into the system?

A. One would assume that.

Q. Is it correct to assume the more adrenalin in the system the more likely the adrenalin would irritate the heart and cause the fatal arrhythmia?

A. That is correct.

In summary under this issue, we find there is substantial credible evidence on the record to support the judgment of the Workers' Compensation Court entered in favor of the respondents. Therefore, we will not disturb that decision.

Under the second issue, appellant contends the Workers' Compensation Court committed reversible error when it refused to grant appellant's motion to retake the deposition of its expert witness, Dr. Willson. The appellant claims it should have been allowed to retake the deposition of Dr. Willson because Dr. Willson was deposed before Dr. Buffington, respondents' expert witness. Appellants claim it was during the deposition of Dr. Buffington that new and relevant medical information was discovered for the first time concerning certain "risk factors" which may have led to Tocco's arteriosclerosis and Dr. Willson did not have the opportunity to review and comment on this new medical

11

information. Further, appellant argues it should have been allowed to retake the deposition of Dr. Willson because the medical information provided by the respondents during discovery was inadequate and this severely prejudiced the effectiveness of Dr. Willson's deposition. We disagree with appellant's argument under this issue for several compelling reasons.

First, the subject matter the appellant wishes to obtain by redeposing Dr. Willson is totally irrelevant to the issues of this case. The appellants wish to redepose Dr. Willson about certain "risk factors" which may have led to Tocco's arteriosclerosis. This inquiry into Tocco's risk factors is totally irrelevant because it is undisputed by either party that Tocco had arteriosclerosis before his employment with the City of Great Falls. Further, as discussed earlier, respondents do not seek compensation for Tocco's arteriosclerosis. The only issue in this case was whether Tocco's physical and emotional stresses at the time of his death may have aggravated his pre-existing arteriosclerosis and caused his sudden death. Dr. Willson thoroughly discussed this issue during his deposition.

Second, appellant's argument that respondents improperly withheld medical information during discovery is also totally without merit. If the appellant had truly believed that respondents' information during discovery was insufficient, it had a clear, exclusive remedy under the Montana Rules of Civil Procedure. Rule 33(a), M.R.Civ.P., provides that ". . . the party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory." The appellant did not seek any order by the lower court compelling discovery.

For the reasons discussed above, we hold the lower court did not abuse its discretion when it denied appellant's motion to retake the deposition of Dr. Willson.

Under the third and final issue, appellant argues that the lower court's ruling allowing respondents and their witnesses to testify about statements alleged to have been made by Tocco for the purpose of proving his mental stress was a violation of the Montana Rules of Evidence regarding hearsay. At the time of trial, appellant points out, it objected to testimony from Tocco's widow and other witnesses concerning statements made by Tocco showing he was under mental and emotional stress from his job shortly before he died. Appellant submits the lower court improperly ruled these statements were admissible on the grounds that the statments were not offered for the truth of the matter asserted. We disagree with appellant's conclusion and agree with the lower court's ruling.

First, it must be noted that by statute the Workers' Compensation Court is not bound by either the common law or statutory rules of evidence, including the prohibition against hearsay evidence. Section 39-71-2903, MCA. Therefore, it is within the discretion of the Workers' Compensation Judge to accept or reject "hearsay" testimony. Krause v. Sears Roebuck (1982), 197 Mont. 102, 641 P.2d 458.

Further, even if the lower court was bound by the rules of evidence (which it is not) the testimony to which the appellant objects is still admissible because it is not hearsay. The statements made by Tocco to the witnesses showing he was under extreme mental and emotional stress from his job shortly before his death were not offered at trial for the truth of the matter asserted. Rather, the purpose of this testimony was to show what Tocco thought and felt

13

shortly before he died. This testimony is not hearsay. Rule 801(c), M.R.Evid. Therefore, the Workers' Compensation Court did not err when it allowed respondents and other witnesses to testify about statements made by Tocco.

The judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

14