No. 86-343

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

MICHAEL HOMME,

       Claimant and Appellant,

   -vs-

RAUENHORST CORPORATION, Employer,

   and

CONTINENTAL CASUALTY COMPANY,

       Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kelleher Law Office; Robert C. Kelleher, Billings,
        Montana

    For Respondent:

        Garlington, Lohn & Robinson; Bradley J. Luck,
        Missoula, Montana

---

Submitted on Briefs: March 12, 1987

Decided: July 28, 1987

Filed: JUL 28 1987

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Workers' Compensation Court found claimant to be permanently partially disabled and not entitled to temporary total disability benefits while he was being retrained. Claimant appealed. We affirm.

The determinative issue is whether the Workers' Compensation Court erred in deciding claimant was not entitled to be paid continued temporary total disability benefits under § 39-71-116(19), MCA, while he was in college being retrained.

Claimant was employed as a construction laborer by Rauenhorst Corporation when a 3/8" drill fell approximately 85 feet from a building and landed in the middle of his back, fracturing a vertebra in the thoracic area of his back. Rauenhorst's insurer, Continental Casualty Company, accepted liability and paid medical benefits and temporary total disability benefits. Claimant is now receiving permanent partial benefits, but would like to begin receiving temporary total benefits again while he is being retrained.

Six days after the accident, claimant went to a hospital emergency room, where x-rays were taken. After this initial examination claimant was seen several times by Dr. Richard A. Nelson, a neurologist. Dr. Nelson last physically examined claimant on July 31, 1984. Dr. Nelson diagnosed central injuries to the vertebra and/or to the disk, a fracture of the spinous process at T-10, and a small bony density that was thought to be causing a slight encroachment upon the thecal sac. The thecal sac consists of strong fibrous sheaths which enclose the canal of the vertebra column. Dr. Nelson also said there was some innervation of the stomach muscles which would lead to some lifting restrictions.

Of central importance to this case, Dr. Nelson stated in his deposition that the claimant had reached maximum healing with regard to the tissues which had been fractured and that he had no argument with a three percent impairment rating being assigned to claimant. However, Dr. Nelson did not believe claimant should go back to his old job as a laborer because of the possibility of reinjuring his back. Dr. Nelson also recommended that a nuclear magnetic resonance (NMR) be done to determine if claimant could be helped by surgery. The NMR would have had to be performed somewhere outside of Montana.

Claimant also saw Dr. Henry H. Gary, a neurosurgeon, and Dr. Robert A. Sterling, an orthopedist, on February 11, 1986, almost a year and a half after Dr. Nelson's last examination. Dr. Gary and Dr. Sterling found that claimant suffered from a fracture of the spinous process, but did not believe the encroachment upon the thecal sac was causing claimant any pain. Neither Dr. Gary nor Dr. Sterling gave any credence to Dr. Nelson's innervation theory. Both Dr. Gary and Dr. Sterling agreed that claimant had reached full recovery as far as maximum healing was concerned and neither recommended further treatment.

The Workers' Compensation Court found that:

> Given the differing medical opinions reached by Dr. Nelson on the one hand and by Drs. Gary and Sterling on the other, it is not surprising to find that there is also a degree of disagreement as to whether claimant has reached maximum healing.

This issue of whether claimant had reached maximum healing is central to whether he is entitled to temporary total disability benefits.

Dr. Nelson declined to issue an impairment rating. However, Dr. Gary and Dr. Sterling concluded that claimant

had reached maximum healing. Dr. Nelson listed several restrictions on claimant's physical activities, including no climbing, only intermittent carrying of light weights, and limited walking. In contrast, Dr. Gary and Dr. Sterling released claimant to return to his previous employment without restriction.

Because of his back problems, claimant contacted the Social and Rehabilitation Services (SRS) whose services are offered to anyone with a vocational handicap. The SRS sponsored claimant and agreed to pay claimant's tuition of $323 per quarter to attend Eastern Montana College as long as claimant maintains a 2.0 GPA. Claimant's counselor at SRS testified Mr. Homme would have also been suitable for on-the-job training and would currently qualify for some positions which would not require any retraining.

Based upon the above outlined medical evidence, injury, and vocational potential, the Workers' Compensation Court concluded that the claimant was not entitled to temporary total disability benefits under § 39-71-116(19), MCA, while he was in college. Claimant appealed.

The issue is whether the Workers' Compensation Court erred in deciding claimant was not entitled to be paid continued temporary total disability benefits under § 39-71-116(19), MCA, while he was in college being retrained.

The standard of review we will use in this case is well settled:

> The function of this Court is to determine whether there is substantial evidence to support the findings and conclusions of the Workers' Compensation Court . . . This Court will not substitute its judgment for that of the trial court as to the weight of the evidence on questions of fact . . . Where there is substantial evidence to support the

4

findings of the Workers' Compensation Court, this
Court will not overturn the decision . . .

Tocco v. City of Great Falls (Mont. 1986), 714 P.2d 160, 163,
43 St.Rep. 310, 314, citing Bond v. St. Regis Paper Co.
(1977), 174 Mont. 417, 419, 571 P.2d 372, 373.

Claimant was injured on June 22, 1984. On that date,
the definition of temporary total disability found at
§ 39-71-116(19), MCA (1983), provided:

> "Temporary total disability" means a condition
> resulting from an injury as defined in this chapter
> that results in total loss of wages and exists
> until the injured worker is as far restored as the
> permanent character of the injuries will permit.
> Disability shall be supported by a preponderance of
> medical evidence.

Although § 39-71-116(19), MCA (1983), was amended effective
October 1, 1985, we will not consider the amended statute
since this Court has held that the statute in effect on the
date of claimant's injury controls. Buckman v. Montana
Deaconess Hospital (Mont. 1986), 730 P.2d 380, 43 St.Rep.
2216. Because amended § 39-71-116(19), MCA, provides that
"[a] worker shall be paid temporary total disability benefits
during a reasonable period of retraining", we emphasize that
this holding does not apply to cases determined under the
statute as amended in 1985.

We will first discuss the implicit determination by the
Workers' Compensation Court that the claimant was not enti-
tled to permanent total disability benefits while attending
college. The Court considered the two-factor test contained
in Metzger v. Chemetron Corporation (Mont. 1984), 687 P.2d
1033, 41 St.Rep. 1788, and concluded that the claimant had
"failed to carry his burden of proving [that] he is so voca-
tionally disabled because of his injury that he has no rea-
sonable prospect of finding employment in his normal labor

5

market." The two-factor _Metzger_ test requires claimant to introduce substantial credible evidence of: (1) the jobs which constitute his normal labor market; and (2) a complete inability to perform the duties associated with those jobs because of his work-related injury. The court concluded that the claimant had failed to introduce substantial credible evidence showing that he was unable to perform the duties associated with his employment because of his work-related injury. We will discuss the evidence in more detail later, but conclude that the substantial credible evidence supports the holding of the Workers' Compensation Court that claimant had a normal labor market, even absent retraining. We affirm the conclusion of the court that claimant was not entitled to permanent total disability benefits.

In order for claimant to receive temporary total disability benefits under the 1983 statute he must prove that his injury has resulted in a "total loss of wages" and his condition still exists because he is not "as far restored as the permanent character of the injuries will permit." Section 39-71-116(19), MCA (1983).

Therefore, we will view the Workers' Compensation Court findings of fact, conclusions of law, and judgment with an eye towards determining whether: (1) Mr. Homme's injury resulted in his total loss of wages; and (2) whether his injury is as far restored as the permanent character of the injury will permit. Taking the second question first, the lower court determined that:

> Claimant has reached maximum healing, and is "as far restored as the permanent character of the injury will permit." Medically, claimant does not satisfy the statutory requirements for being temporarily totally disabled.

6

This conclusion was reached after a careful discussion by the Workers' Compensation Court of the medical testimony by Dr. Nelson, Dr. Gary, and Dr. Sterling. In essence, the court concluded that the medical evidence "undeniably weighs against Dr. Nelson's innervation theory." Regarding the healing of the fracture of the spinous process, both Dr. Gary and Dr. Sterling found that Mr. Homme had reached maximum healing. Dr. Nelson declined to issue an impairment rating. The Workers' Compensation Court's conclusion that Mr. Homme had reached maximum healing is supported by substantial evidence. Therefore, we affirm that conclusion.

Turning to the question of whether Mr. Homme's injury has resulted in his total loss of wages, the lower court summarized the two vocational consultants' testimony:

> . . . both of the vocational consultants who testified opined that claimant did have a normal labor market, even absent training.

It is clear from the Workers' Compensation Court's conclusions that Mr. Homme's injury has not resulted in his total loss of wages. Indeed, if Mr. Homme has had a normal labor market available to him since at least February 20, 1986, as the court found, then his injury has certainly not by necessity resulted in his total loss of wages.

Claimant also argues that the court was obligated to comment on testimony offered by five witnesses called by the claimant regarding his inability to work. In support of this argument, claimant cites a section from Professor Larson's treatise on Workers' Compensation law which states that a decision may be reversed as arbitrary and unsupported if uncontradicted evidence is not followed. In this case, the Workers' Compensation Court had deposition testimony from medical doctors, as well as testimony from two vocational

7

rehabilitation experts, who concluded claimant was presently able to work. Since the testimony of the five witnesses does not qualify as uncontradicted evidence, the court's failure to comment on each witnesses' testimony is not reversible error.

We affirm the Workers' Compensation Court's conclusion that Mr. Homme is not entitled to temporary total disability benefits, but only the permanent partial benefits which he is receiving. Based upon our decision as stated above, we also affirm the court's denial of the 20 percent penalty and attorney fees and costs.

Justice

We Concur:

Chief Justice

Justices

8

Mr. Justice William E. Hunt, Sr., dissenting:

I dissent.

I do not see how the majority can hold that the Workers' Compensation Judge is correct in finding that the claimant "failed to carry his burden of proving [that] he is so vocationally disabled because of his injury that he has no reasonable prospect of finding employment in his normal labor market in view of his present vocational retraining program." He is either able to work and does not need to be retrained, or he cannot work and needs to be retrained. If it is the latter then he is entitled to total compensation whether it is temporary or permanent.

The evidence is that he cannot return to his job involving hard physical labor and needs to be retrained. That finding puts him within the meaning of the definition of temporary total disability found at § 39-71-116(19), MCA (1983), provided:

> "Temporary total disability" means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence.

The majority seems to hold that the for the worker anything is possible and it is up to him to prove what he cannot do. There was testimony by experts that he could get a position in the banking business. The evidence shows the claimant to be an intelligent responsible person who may well have an aptitude for the banking business but how he would prove his capability one way or the other in that line without training is not clear from the evidence. Perhaps a claimant whose background is construction labor can move

right into the banking business, but it will take a better record than the one before us to prove that. I would reverse the Workers' Compensation Court.

_____
Justice

Mr. Justice John C. Sheehy:

I concur in the dissent of Mr. Justice Hunt.

_____
Justice